[No. S013859. June 27, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY COOPER, Defendant and Appellant.

COUNSEL

Richard Schwartzberg, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, Harley D. Mayfield, Assistant Attorney General, Michael D. Wellington, Esteban Hernandez, Louis R. Hanoian and Laura Whitcomb Halgren, Deputy Attorneys General, for Plaintiff and Respondent.

Kent S. Scheidegger as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

LUCAS, C. J.—We are called on to decide whether it is error to instruct a jury that the "getaway" driver in a robbery may be convicted of aiding and abetting the robbery, and therefore of being a principal rather than a mere accessory after the fact (Pen. Code, §§ 31, 32; all subsequent statutory references are to this code unless otherwise indicated), even if the jury finds that the defendant did not form the requisite intent to facilitate or encourage commission of the robbery prior to the robbers' flight with the stolen property. The Court of Appeal reversed the aiding and abetting conviction of defendant Larry Cooper, and the People sought review. We conclude that the Court of Appeal erred in reversing the conviction.

As our cases recognize, the prosecution must show an aider and abettor intended to facilitate or encourage the principal offense prior to or during its commission. The main issue here, therefore, is the duration of the commis-

sion of a robbery for purposes of determining whether a getaway driver is liable as an aider and abettor rather than an accessory.

We conclude that the commission of a robbery for purposes of determining aider and abettor liability continues until all acts constituting the robbery have ceased. The asportation, the final element of the offense of robbery, continues so long as the stolen property is being carried away to a place of temporary safety. Accordingly, in order to be held liable as an aider and abettor, the requisite intent to aid and abet must be formed *before or during such carrying away of the loot to a place of temporary safety*. Therefore, a getaway driver who has no prior knowledge of a robbery, but who forms the intent to aid in carrying away the loot during such asportation, may properly be found liable as an aider and abettor of the robbery.

We agree with the Court of Appeal, albeit for other reasons, that the trial court erred here. The trial court's instructions improperly permitted the jury to conclude that a getaway driver, who had no knowledge of the robbery until the robbers entered the getaway car, is liable as an aider and abettor *even if the robbers were not carrying away the loot during the escape*. Unlike the Court of Appeal, however, we conclude the instructional error was harmless beyond reasonable doubt. Here the carrying away of the stolen property to a place of temporary safety did in fact coincide with the escape. Therefore, the decision of the Court of Appeal is reversed with directions to affirm defendant's conviction.

## I. BACKGROUND

### A. *Facts*

Defendant drove his two codefendants to the parking lot of a shopping center. After he parked the car, the three alighted and conversed for several minutes. At one point, defendant walked over to a wall bordering a nearby school, peered over the top, and then returned to the car. Several minutes later, the codefendants ran across the parking lot and, without stopping, slammed into an 89-year-old shopper, stealing his wallet. Leaving the victim lying on the ground, the codefendants fled with the loot to defendant's car, which was moving with its two right-side doors open. After his codefendants jumped inside, defendant hurriedly drove away.

### B. *Trial Court Proceedings*

Defendant and his codefendants were charged with robbery (§ 211). The charge against defendant was based on the theory that he aided and abetted the robbery by driving the getaway car, and therefore could be punished as

a principal.[1] Defendant claimed that with respect to the robbery the evidence proved no more than he was an accessory after the fact.[2] Specifically, defendant contended the evidence did not show beyond reasonable doubt that he possessed prior knowledge of or intent to aid the robbery. Rather, he claimed the evidence might support the conclusion that he knew his companions were going to commit a theft and that he merely intended to assist them in the commission of that lesser crime. Defendant did not testify at his trial.

The court gave five instructions relevant to the issue presented in this case. First, it instructed that one who aids and abets the commission of a crime is guilty of all offenses that are the "actual and probable consequences" of that crime and that it is the jury's responsibility to decide whether the offense charged is such a consequence. (See CALJIC No. 3.00.)[3] Next, the court defined an aider and abettor as one who, with knowledge of the unlawful purpose of the perpetrators and with intent to commit, encourage, or facilitate commission of an offense, aids, promotes, or encourages commission of that offense. (See CALJIC No. 3.01.)[4]

Third, over defendant's objection, the court instructed: "The commission of the crime of robbery is not confined to a fixed place or a limited period of time. A robbery is still in progress after the original taking of physical possession of the stolen property while the perpetrator is in hot flight, that is, while in possession of the stolen property he is fleeing in an attempt to escape. Likewise, it is still in progress so long as he is still immediately being pursued in an attempt to capture him or regain the stolen property. A robbery is complete when the perpetrator has eluded his pursuers, if any; has reached a place of temporary safety and is in unchallenged possession of

[1] Section 31 states: "All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed."

[2] Section 32 states: "Every person who, after a felony has been committed, harbors, conceals, or aids a principal in such felony, with the intent that such principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

[3] This instruction follows our reasoning in *People* v. *Croy* (1985) 41 Cal.3d 1, 12, footnote 5 [221 Cal.Rptr. 592, 710 P.2d 392]. However, because the trial court gave multiple instructions providing the jury with alternative bases for convicting defendant of robbery as an aider and abettor, it would be improper to rely on this proper instruction to affirm defendant's robbery conviction given the error, discussed below, with respect to former CALJIC No. 9.15 (4th ed.). We emphasize, however, the continued validity and vitality of the *Croy* theory of aider and abettor liability for "any reasonably forseeable offense committed" by the person(s) aided and abetted. (41 Cal.3d at p. 12, fn. 5.)

[4] CALJIC No. 3.01 was given by the trial court as modified in response to our opinion in *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], discussed below.

the stolen property after having effected an escape with such property." (CALJIC No. 9.44 (5th ed.) [former CALJIC No. 9.15 (4th ed.)].)[5]

Fourth, the court instructed that the "offense of being an accessory requires the specific intent that the perpetrator avoid or escape from arrest, trial, conviction, or punishment." (CALJIC No. 3.31.) Finally, the court defined an accessory after the fact as one who, "after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony. . . ."

The jury convicted defendant and his codefendants of robbery. The court suspended imposition of defendant's sentence, imposing five years' probation with one year in the county jail and a $1,000 fine.

## C. *Court of Appeal Decision*

On appeal, defendant asserted the court erred in instructing that a robbery is "still in progress" through the escape until the robbers reach a place of temporary safety. The Court of Appeal agreed, and reversed defendant's conviction on that basis.

According to the Court of Appeal, the act of driving the getaway car could support a conviction under either section 31 or section 32; the legal distinction between the two levels of culpability must be whether defendant acquired the intent to aid his companions before or after an asportation of the stolen property (the final element of the offense of robbery) was complete. Because the court concluded that asportation occurred *prior* to the robbers' entry into the getaway car, the Court of Appeal found the trial court's instruction, suggesting that the commission of a robbery continues through the escape to a place of temporary safety, obscured the primary distinction between the two offenses. The Court of Appeal determined that the error was prejudicial because the inference that defendant was merely an accessory was "possible, even if not the most compelling construction of the evidence presented."

---

[5] As the comment to former CALJIC No. 9.15 (4th ed.) notes, this instruction was drafted in response to our decisions in the felony-murder (§ 189) and kidnapping-for-robbery (§ 209) contexts. As discussed more fully below, in regard to these and other statutory rules dealing with ancillary consequences of robbery, we have held that commission of a robbery continues *through the escape* until the perpetrators have reached a place of temporary safety. Thus, the principal question presented in this case is whether this instruction, applicable to felony murder and other ancillary consequences of robbery, should be given for purposes of determining aider and abettor liability.

## II. Discussion

### A. Duration of "Commission" of Robbery

In *People* v. *Croy, supra,* 41 Cal.3d 1, we expressly left open the question whether a person may properly be classified as an aider and abettor, where he had no knowledge of a robbery until the robber's entry into the getaway car but thereafter knowingly aided the robber in the getaway. (*Id.,* at p. 15, fn. 9.)[6] To answer this question, we must first look to the elements of aiding and abetting liability. ■ A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime. (*People* v. *Beeman, supra,* 35 Cal.3d 547, 561.)

*Beeman* presupposes that, if a person in fact aids, promotes, encourages or instigates commission of a crime, the requisite intent to render such aid must be formed *prior to or during* "commission" of that offense. (*People* v. *Beeman, supra,* 35 Cal.3d 547, 558 [imposing aider and abettor liability because defendant intended to provide aid "prior to" commission of robbery]; *People* v. *Mitchell* (1986) 183 Cal.App.3d 325, 330 [228 Cal.Rptr. 286] [upholding aiding and abetting conviction based on inference of knowledge of robbery "during the actual taking"].) It is legally and logically impossible to both form the requisite intent and in fact aid, promote, encourage, or facilitate commission of a crime after the commission of that crime has ended.

■ In the case before us, we must determine the duration of the commission of a robbery for purposes of assessing aider and abettor liability. We have held that once all elements of a robbery are satisfied, the offense has been *initially* committed and the principal may be found guilty of robbery, as distinct from a mere attempt. (See, e.g., *People* v. *Bigelow* (1984) 37 Cal.3d 731, 753 [209 Cal.Rptr. 328, 691 P.2d 994, 64 A.L.R.4th 723], and cases cited therein.) This threshold of guilt-establishment is a fixed point in time, but is not synonymous with "commission" of a crime for our purposes.

For purposes of determining aider and abettor liability, the commission of a robbery continues until all acts constituting the offense have *ceased.*[7]

---

[6]*Croy* implicitly negated any suggestion in footnote 7 of *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 962 [127 Cal.Rptr. 135, 544 P.2d 1335], that this question already had been decided.

[7]The logic of viewing "committed" as a fixed point in time for purposes of guilt-establishment and "commission" as a temporal continuum for purposes of determining accomplice

The taking element of robbery itself has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot. (See *People* v. *Perhab* (1949) 92 Cal.App.2d 430 [206 P.2d 1133].) Thus, in determining the duration of a robbery's commission we must necessarily focus on the duration of the final element of the robbery, asportation.

Although, for purposes of establishing guilt, the asportation requirement is initially *satisfied* by evidence of slight movement (see *People* v. *Clark* (1945) 70 Cal.App.2d 132, 133 [160 P.2d 553]), asportation is not confined to a fixed point in time.[8] The asportation continues thereafter as long as the loot is being carried away to a place of temporary safety. Therefore, in order to fulfill the requirements of *Beeman, supra*, 35 Cal.3d 547, for conviction of the more serious offense of aiding and abetting a robbery, a getaway driver must form the intent to facilitate or encourage commission of the robbery *prior to or during the carrying away of the loot to a place of temporary safety.*[9]

---

liability can be seen from the perspectives of both the victim and the accomplice. The rape victim, for example, would not agree that the crime was completed once the crime was initially committed (i.e., at the point of initial penetration). Rather, the offense does not end until all of the acts that constitute the rape have ceased. Furthermore, the unknowing defendant who happens on the scene of a rape after the rape has been initially *committed* and aids the perpetrator in the continuing criminal acts is an accomplice under this concept of "commission," because he formed his intent to facilitate the commission of the rape *during its commission.*

The dissent fails to recognize this important distinction. In the midst of its criticism of our analysis of the duration of a robbery's "commission" for purposes of aider and abettor liability, the dissent pauses to put forth in one conclusory sentence its preferred resolution of the issue. For purposes of determining "commission" in the aider and abettor context, the dissent adopts the inapposite rule of "slight asportation" used to distinguish mere attempts from successful robberies. (See dis. opn., *post*, p. 1174.) Because the dissent embraces this rule without explanation or analysis, choosing instead to devote all but one sentence to a criticism of the rule we recognize today, we are unable to reciprocate with a similar lengthy criticism of the dissent's proposed rule.

[8] This reasoning is consistent with a long line of Court of Appeal cases, left undisturbed by this court, holding that mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot. (See, e.g., *People* v. *Estes* (1983) 147 Cal.App.3d 23, 27-28 [194 Cal.Rptr. 909]; *People* v. *Kent* (1981) 125 Cal.App.3d 207, 213 [178 Cal.Rptr. 28]; *People* v. *Perhab, supra*, 92 Cal.App.2d 430, 434-436.) In order to support a robbery conviction, the taking, either the gaining possession or the carrying away, must be accomplished by force or fear. (See § 211.) Thus, these cases implicitly hold that the asportation component of the taking continues while the loot is carried away, and does not end on slight movement. The dissent's conclusion to the contrary is wholly without support and lacks logical foundation. (See dis., opn., fn. 3, *post*, p. 1175.)

[9] In launching into its parade of horrors of the effect of our decision today, the dissent disregards the requirement that *all* elements of *Beeman, supra*, 35 Cal.3d 547, must be satisfied before a defendant may be convicted of the more serious offense of aiding and abetting a robbery. (See dis. opn., *post*, pp. 1176-1177.)

In determining the duration of the asportation, we reject the argument that commission of the robbery necessarily ends once the loot is removed from the "immediate presence" of the victim. Although the "immediate presence" language comes directly from section 211, this language does not pertain to the *duration* of robbery. Section 211 defines robbery as "the felonious taking of personal property in the possession of another, *from his person or immediate presence . . . .*" (Italics added.) Taking from the "person" and from the "immediate presence" are alternatives. These terms are spatially, rather than temporally, descriptive. They refer to the area *from which* the property is taken, not *how far* it is taken. (See *People* v. *Hayes* (1990) 52 Cal.3d 577, 626-628 [276 Cal.Rptr. 874, 802 P.2d 376]; *People* v. *Bauer* (1966) 241 Cal.App.2d 632, 642 [50 Cal.Rptr. 687].) Put another way, these limitations on the scope of the robbery statute relate to the "gaining possession" component of the taking as distinct from the "carrying away" component.

We also reject the argument for our purposes here that commission of the robbery continues through *the escape* to a place of temporary safety, regardless of whether or not the loot is being carried away simultaneously. In the context of certain statutes concerning ancillary consequences of robbery, robbery is said to continue through the escape to a place of temporary safety, whether or not the asportation of the loot coincides with the escape (hereafter, the escape rule). (See, e.g., *People* v. *Laursen* (1972) 8 Cal.3d 192, 200 [104 Cal.Rptr. 425, 501 P.2d 1145] [for purposes of section 209, commission or perpetration of a robbery continues through "the robber's *escape* to a location of temporary safety"] [italics added].)[10]

The escape rule originated in the context of the felony-murder doctrine in the landmark case of *People* v. *Boss* (1930) 210 Cal. 245 [290 P. 881]. (See also, *People* v. *Salas* (1972) 7 Cal.3d 812, 823-824 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832]; *People* v. *Ketchel* (1963) 59 Cal.2d 503, 524 [30 Cal.Rptr. 538, 381 P.2d 394]; *People* v. *Kendrick* (1961) 56 Cal.2d 71, 90 [14 Cal.Rptr. 13, 363 P.2d 13].) We have also applied the escape rule to several other ancillary consequences of robbery. (See, e.g., *People* v. *Laursen, supra,* 8 Cal.3d 192 [kidnapping committed during escape from robbery is kidnapping "to commit robbery" within section 209]; *People* v.

---

[10] We note that the act of carrying away the loot to a place of temporary safety, and thereby the commission of the robbery for purposes of aider and abettor liability, may in many circumstances coincide with the escape to a place of temporary safety. However, the distinction drawn between the escape rule (applicable to certain ancillary consequences of robbery), and the rule adopted here for purposes of determining aider and abettor liability, is not a distinction without meaning. As we discuss below, it is a principled distinction. Moreover, we emphasize here that it is also an effective distinction. In certain circumstances, carrying away the loot will *not* coincide with the escape. For instance, the loot may either be abandoned in haste prior to the escape or be carried away by a second getaway car.

*Carroll* (1970) 1 Cal.3d 581 [83 Cal.Rptr. 176, 463 P.2d 400] [injury inflicted on robbery victim after property had been asported but before robber escaped to a place of temporary safety occurred "in the course of commission of the robbery" for purposes of bodily injury enhancement].)

Never, however, have we applied the escape rule in contexts other than the construction of statutes concerning certain ancillary consequences of robbery. Nonetheless, one Court of Appeal has done so. Without substantial discussion, the Court of Appeal in *People* v. *Jardine* (1981) 116 Cal.App.3d 907 [172 Cal.Rptr. 408], adopted the escape rule for purposes of determining aider and abettor liability.[11] The People assert that we should here do the same.

The defendant in *Jardine*, a getaway driver in a store robbery, was charged as an aider and abettor. At trial, the defendant and a cohort testified that the defendant had no knowledge of the robbery until the perpetrators entered the car after robbing the store. After being instructed on the elements of aiding and abetting but not on those of accessory after the fact, the jury found the defendant guilty of robbery. The Court of Appeal affirmed the conviction. In its view, the testimony "unambiguously estab-lishe[d] that [the defendant] was an [aider and abettor] to the robbery, in that he knowingly aided [the others] to carry off the loot. . . . [¶] Since a robbery is a continuing crime which is not completed until the robbers reach a place of temporary safety, [the defendant's] assistance *in the escape* was necessarily a participation in the robbery. . . ." (116 Cal.App.3d at p. 919, italics added.) Thus, the court concluded, the evidence did not warrant an accessory instruction. (*Id.*, at p. 922.)

In holding that assistance in the escape is necessarily participation in the robbery for purposes of determining aider and abettor liability, the court in *Jardine* relied on the cases discussed above dealing with ancillary consequences of robbery, including *Laursen, Salas, Boss,* and *Carroll.* (*People* v. *Jardine, supra,* 116 Cal.App.3d 907, 919-921.) For the several reasons discussed below, however, we decline to adopt the escape rule for our purposes.

First, although we agree that the escape rule serves the legitimate public policy considerations of deterrence and culpability in the context of determining certain ancillary consequences of robbery, the rule does not similarly serve those considerations in the context of determining principal liability as an aider and abettor of a robbery. In *Laursen, supra,* 8 Cal.3d 192, 198,

---

[11] The Court of Appeal in the present case rejected the reasoning of *Jardine*. (See also, *People* v. *Scott* (1985) 170 Cal.App.3d 267 [215 Cal.Rptr. 618].)

we recognized that the escape rule served public policy because the primary purpose of the kidnapping-to-commit-robbery statute is to impose harsher criminal sanctions to deter activity that substantially increases the risk of harm. Similarly, in *People* v. *Bigelow, supra*, 37 Cal.3d 731, 753, we pointed out that the escape rule is "used in felony-murder cases to determine when a killing is so closely related to an underlying felony as to justify an enhanced punishment for the killing." These considerations of deterrence and culpability are well served by application of the escape rule to statutes concerning certain ancillary consequences of robbery. These same public policy considerations are not, however, equally applicable to the determination of aider and abettor liability.

A primary rationale for punishing aiders and abettors as principals—to deter them from aiding or encouraging the commission of offenses—is not served by imposing aider and abettor liability on a getaway driver in a robbery if that person was unaware of the robbery until after all of the acts constituting robbery, *including the asportation*, had ceased. Such a driver is powerless to either prevent the robbery, or end the acts constituting the robbery if such acts have already ceased. Although the law should also deter the getaway driver from helping the robbers escape from justice after commission of the crime has ended, this goal is appropriately served by the threat of liability as an accessory after the fact. Thus, in determining liability as an aider and abettor, the focus must be on the acts constituting the robbery, not the escape.

Furthermore, in our view, adopting the escape rule for purposes of determining aider and abettor liability would be inconsistent with reasonable concepts of culpability. As noted, in certain circumstances the asportation will not coincide with the escape. A getaway driver, whose intent to aid in the escape is formed after asportation has ceased, cannot facilitate or encourage commission of the robbery.[12] Rather, the effect of his or her actions is only to lessen the chance that the perpetrators will be captured and held accountable for their crimes. Thus the culpability of such a getaway driver is that of an accessory after the fact, rather than that of a principal. This distinction comports with the language of section 32, which expressly defines accessory liability as including a person who aids a principal with intent that the principal "avoid or escape from arrest." (See *ante*, fn. 2.)

Second, it would be illogical to adopt the escape rule for purposes of determining aider and abettor liability. Such a holding would eliminate the

---

[12] The intent of such a getaway driver is to be distinguished from one who agrees before (or during) commission of a robbery to be a getaway driver and thereby encourages and/or facilitates the commission of the robbery. In such circumstances, the driver could be liable as an aider and abettor of the robbery.

distinction between aider and abettor liability and accessory liability in the context of getaway drivers in a manner both contrary to statute, and out of step with reasonable concepts of culpability and practical considerations of deterrence, as discussed above. (See *People* v. *Scott, supra,* 170 Cal.App.3d at p. 271; cf. *People* v. *Brady* (1987) 190 Cal.App.3d 124, 131 [235 Cal.Rptr. 248].) Moreover, the escape, not being an element of robbery, should not be used to define the duration of robbery for purposes of determining aider and abettor liability. Rather, in delineating a crime it is logical to look to the elements that constitute that crime.

Third, cases applying the escape rule to certain ancillary consequences statutes do not compel the conclusion that commission of a robbery also continues through the escape for our purposes here. In each of these cases we have been careful not to imply that this rule should apply outside the legal contexts expressly addressed. (See, e.g., *People* v. *Salas, supra,* 7 Cal.3d 812, 823 ["a fleeing robber's failure to reach a place of temporary safety is alone sufficient to establish the continuity of the robbery *within the felony murder rule*"] [italics added]; *People* v. *Bigelow, supra,* 37 Cal.3d 731, 753, 754 ["drawing upon the test used in felony-murder" cases and adopting "the same standard for the special circumstance of murder 'to perfect an escape' "].)

Last, we note that the Courts of Appeal have refused to adopt the escape rule for purposes of determining aider and abettor liability in *analogous* circumstances. As is the case with robbery, the potential of felony-murder liability of burglars continues through the escape until the perpetrators reach a place of temporary safety. (*People* v. *Fuller* (1978) 86 Cal.App.3d 618 [150 Cal.Rptr. 515].) Nonetheless, the rule has developed in the Courts of Appeal that one who forms the intent to aid a burglar after the acts constituting the burglary have ceased cannot be liable as an aider and abettor to the burglary. (See, e.g., *People* v. *Macedo* (1989) 213 Cal.App.3d 554 [261 Cal.Rptr. 754]; *People* v. *Brady, supra,* 190 Cal.App.3d 124; *People* v. *Markus* (1978) 82 Cal.App.3d 477 [147 Cal.Rptr. 151].)[13]

Accordingly, we decline to adopt the escape rule, applicable in the context of certain ancillary consequences of robbery, for purposes of determining aider and abettor liability.[14] For purposes of determining liability as an

---

[13] We note that asportation is not an element of burglary. Thus, the commission of the burglary and the escape will never coincide. For this reason, the distinction between commission for purposes of felony-murder liability and commission for purposes of aider and abettor liability is clearer in the burglary context than in robbery. Nonetheless, the fact that this distinction is also made in the burglary context supports our conclusion that the duration of an offense for purposes of aider and abettor liability must be determined with respect to the elements of the offense, rather than with respect to the escape.

[14] To the extent that *People* v. *Jardine, supra,* 116 Cal.App.3d 907, is inconsistent with this opinion, it is disapproved.

aider and abettor, the commission of robbery continues so long as the loot is being carried away to a place of temporary safety.

B. *Instructional Error Analysis*

 Returning to the case before us, we now consider whether the trial court erred under the preceding analysis. The court instructed: "The commission of the crime of robbery is not confined to a fixed place or a limited period of time. A robbery is still in progress after the original taking of physical possession of the stolen property *while the perpetrator is in hot flight*, that is, while in possession of the stolen property he is fleeing *in an attempt to escape*. Likewise, it is still in progress *so long as he is still being immediately pursued in an attempt to capture him* or regain the stolen property. A robbery is complete when the perpetrator has eluded his pursuers, if any; has reached a place of temporary safety and is in unchallenged possession of the stolen property *after having effected an escape* with such property." (CALJIC No. 9.44 (5th ed.) [former CALJIC No. 9.15 (4th ed.)], italics added.)

This instruction was drafted to effectuate the escape rule, as developed in cases dealing with the ancillary consequences of robbery. (Comment to former CALJIC No. 9.15 (4th ed.).) As discussed above, we decline to adopt the escape rule for purposes of determining aider and abettor liability. Rather, the commission of a robbery continues so long as the loot is being carried away to a place of temporary safety. Although the carrying away, or asportation, *may* coincide with the perpetrator's escape, it need not. Thus the many references to the escape in the instruction defining the duration of robbery were improper for purposes of determining aider and abettor liability. This instruction was erroneous because it could have misled the jury into believing that commission of a robbery continues during the escape to a place of temporary safety even if the loot is not being carried away contemporaneously.

In the future, courts should instruct that for purposes of determining liability as an aider and abettor to robbery, the commission of the crime of robbery is not confined to a fixed place or a limited period of time and continues so long as the stolen property is being carried away to a place of temporary safety. Finally, CALJIC No. 9.44 (5th ed.) [former CALJIC No. 9.15] (4th ed.), drafted in response to our decisions in the context of the ancillary consequences of robbery, should not be given for the purposes of determining aider and abettor liability.

C. *Harmless Error Analysis*

 We must consider whether the erroneous instruction requires reversal of defendant's conviction. Defendant correctly contends the

instructional error, affecting an element of the offense charged, warrants reversal unless it is harmless beyond reasonable doubt. (See *People* v. *Hayes, supra,* 52 Cal.3d 577, 628.) We conclude that under this standard reversal is not required here.

The references to the escape in the trial court's instruction as to the duration of the commission of robbery were harmless beyond a reasonable doubt because the act of carrying away the loot to a place of temporary safety *did* in fact coincide with the escape. The defense did not argue to the contrary, and there was no evidence to support such an argument in any event. On these facts, if the jury found that defendant formed the intent to facilitate or encourage commission of the robbery prior to or during the escape to a place of temporary safety, then such intent was also necessarily formed prior to or during the act of carrying away the loot to a place of temporary safety. Thus, the references to the escape could not have misled the jury with respect to the duration of this particular robbery. Affirmance of defendant's conviction is warranted.

### III. DISPOSITION

For the reasons stated above, we reverse the judgment of the Court of Appeal with instructions to affirm defendant's conviction.

Panelli, J., Arabian, J., and Baxter, J., concurred.

**KENNARD, J.**—I dissent.

For more than 100 years our law has recognized that a person who assists in the commission of an offense has a higher degree of moral culpability than a person who helps the perpetrator after the offense has been committed. This distinction has been acknowledged by the Legislature. (Pen. Code, §§ 31, 32, 33.) Nevertheless, choosing to ignore statutory law and established precedent, the majority now holds that a person who aids an escaping robber after the robbery has been completed may be held criminally liable as a principal to the robbery if the robber, at the time of the assistance, still has possession of the stolen property and the assistance is given before the robber has reached a place of "temporary safety."

The majority's "temporary safety" test finds no support in our previous decisions, draws a line that is inappropriate to the defendant's level of culpability, and is inconsistent with the general rule that one who aids a fleeing felon is not a principal in the commission of the felony. Whether a robber is carrying stolen property or has reached a place of "temporary safety" has no bearing on the type of offense committed by a person who

aids in the robber's escape: a person who is not involved in a robbery until the property has already been forcibly taken and who then assists the robber's escape is, under established principles of law, only an accessory after the fact.

## I

Our law draws a fundamental distinction between one who aids and abets the commission of a crime (an aider and abettor) and one who assists a person who has already committed a crime (an accessory after the fact). An aider and abettor is treated as a principal in the commission of the offense (Pen. Code, §§ 31, 971; all further statutory references are to the Penal Code) and is subject to the same penalties as the actual perpetrator. This is not true, however, for an accessory after the fact. Although at common law accessories after the fact were subject to the same punishment as their principals, this rule has been abandoned for well over a century, both in England and in this country. (LaFave & Scott, Criminal Law (2d ed. 1986) § 6.9, p. 598.) Being an accessory after the fact is now treated as a distinct crime (§ 32), with statutorily defined penalties that are less serious than for most other felonies and are unrelated to the penalties for the offense committed by the accessory's principal (§ 33). This reflects the Legislature's recognition that the antisocial conduct of an accessory after the fact differs in degree and kind from that of an aider and abettor.

A person who facilitates the escape of a fleeing felon, but who had no involvement in the commission of the felony, has historically been treated as an accessory after the fact. As we said in *People* v. *Hoover* (1974) 12 Cal.3d 875, 879 [117 Cal.Rptr. 672, 528 P.2d 760]: "Merely aiding in the escape of a principal does not result in liability as a principal, but only as an accessory under Penal Code sections 32 and 33."

This rule is grounded in the language of section 32, which states that a person who aids a principal with the intent that the principal "avoid or escape from arrest" is an accessory after the fact. The rule also represents the prevailing law in this country. As one legal scholar has explained: "[A] person who was present when a felony was committed, but in no way aided or abetted its commission . . . may become an accessory after the fact by rendering aid to the felon thereafter in order to facilitate his escape." (1 Wharton, Criminal Law (14th ed. 1978) § 33, p. 171; see also, Grimm, *Principals, Accessories and the Continuing Crime* (1960) 51 J. Crim. L., Criminology & Police Science 66, 72 [when "the crime is complete and the intent of the joiner is to aid the principal in escape . . . it is clearly the situation contemplated by accessory after the fact statutes."].)

In this case, the majority does not challenge the rule that one who aids an escaping felon is an accessory after the fact. Nor does the majority deny that the rule applies to the offense of robbery; indeed, the majority emphatically disapproves the "escape rule," which the Court of Appeal in *People* v. *Jardine* (1981) 116 Cal.App.3d 907 [172 Cal.Rptr. 408] mistakenly applied in this context, but which is entirely inconsistent with the foregoing principles.

Under the "escape rule," commission of a robbery is not complete until the escaping robber has reached a place of temporary safety, and a person who facilitates the escape is treated as a principal in the robbery rather than as an accessory after the fact. As the majority points out, "adopting the escape rule for purposes of determining aider and abettor liability would be inconsistent with reasonable concepts of culpability" (maj. opn., *ante*, p. 1168), and "it would be illogical to adopt the escape rule for purposes of determining aider and abettor liability [for] [s]uch a holding would [be] contrary to statute, and out of step with reasonable concepts of culpability and practical considerations of deterrence . . . ." (Maj. opn., *ante*, pp. 1168-1169.)

Incongruously, after explaining at length why the escape rule is unsound, the majority proceeds to adopt a close variant of the very rule it condemns, albeit under a different name. To reach this result, the majority focuses on the asportation of the stolen property, which is an element of robbery. According to the majority, asportation continues until the robber has come to a place of "temporary safety." Therefore, the majority concludes, the robbery is not "completed" until the robber has reached a temporary haven, and anyone who assists a robber carrying stolen property before that haven is reached is an aider and abettor in the substantive offense itself, rather than merely an accessory after the fact.

Although labeling it "asportation to a place of temporary safety," the majority essentially adopts the escape rule under another name. But an escape by any other name is still an escape. An escape from the scene of a crime *is* an attempt to reach "a place of temporary safety." The majority seems to suggest that the escape somehow takes on a different character when the person making the escape is a robber in possession of stolen property. Not so. The escape rule is no less "illogical" and "inconsistent with reasonable concepts of culpability" when the person escaping is a robber carrying stolen property. An escaping felon who is carrying stolen property is still an escaping felon, and a person who aids an escaping felon is an accessory after the fact.

The majority's position is not only inconsistent with the rule that those who aid escaping felons are accessories, it also finds no support in any

statutory provisions. There is nothing in the statutory definition of robbery to suggest that, for the crime of robbery to have been completed, asportation of the stolen property must continue until a place of temporary safety is reached.[1] Indeed, case law is to the contrary.

It has long been recognized that, assuming the other elements of the offense have been established, only slight asportation is necessary to make the crime of robbery complete. As the court in *People* v. *Beal* (1934) 3 Cal.App.2d 251, 253 [39 P.2d 504], observed more than 50 years ago: "The crime of robbery is complete when the robbers without lawful authority and by means of force or fear obtain possession of the personal property of another in the presence of its lawful custodian and reduce it to their manual possession. It is not necessary that, to complete the crime, they carry it out of the physical presence of the lawful possessor or make their escape with it." This is still the law. (*People* v. *Scott* (1985) 170 Cal.App.3d 267, 272 [215 Cal.Rptr. 618]; *People* v. *Gordon* (1982) 136 Cal.App.3d 519, 529 [186 Cal.Rptr. 373]; *People* v. *Green* (1979) 95 Cal.App.3d 991, 1000 [157 Cal.Rptr. 520]; *People* v. *Price* (1972) 25 Cal.App.3d 576, 579 [102 Cal.Rptr. 71]; *People* v. *Martinez* (1969) 274 Cal.App.2d 170, 174 [79 Cal.Rptr. 18]; *People* v. *Quinn* (1947) 77 Cal.App.2d 734, 737 [176 P.2d 404]; *People* v. *Clark* (1945) 70 Cal.App.2d 132, 133 [160 P.2d 553]; 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 641, p. 723.) Accordingly, a "late joiner" (one who helps a robber to escape after the robber's asportation of stolen property) is criminally liable only as an accessory after the fact, irrespective of whether the robber has carried off the stolen property to a place of temporary safety. We addressed this question in *People* v. *Tewksbury* (1976) 15 Cal.3d 953 [127 Cal.Rptr. 135, 544 P.2d 1335], where we stated that a person who aids only in the "escape" of one who has committed a robbery is an accessory after the fact, even if the robber is in possession of items taken in the commission of the crime.

In *Tewksbury*, the defendant's involvement in the robbery of a restaurant was established by the testimony of one Mary Pedraza. Pedraza testified that she was waiting for the defendant at a predetermined place near the restaurant and that shortly after the robbery the defendant told her something had gone wrong, a man had been killed, and they would have to leave quickly. They drove to Pedraza's house and divided the stolen money. (*People* v. *Tewksbury*, *supra*, 15 Cal.3d 953, 957-958.)

On appeal, the defendant argued that Pedraza was an accomplice to the robbery and therefore her testimony was insufficient to convict him without

---

[1] Section 211 provides: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

corroboration. (§ 1111 [accomplice testimony must be corroborated].) We disagreed, concluding that although the jury could have found that Pedraza was an accomplice—based on evidence that she might have participated in the *planning* of the robbery—the evidence did not show that she was an accomplice as a matter of law. (*People* v. *Tewksbury, supra,* 15 Cal.3d at p. 962.) We also observed that Pedraza could not be an accomplice based solely on her participation in the escape after the robbery: "[I]t does not appear that accomplice status could be imputed to [Pedraza] on the ground that because the perpetrators of the crimes had not yet made their escape the crimes were still in progress when they met [Pedraza] at the rendezvous point. *Her conduct thereafter with knowledge of the crimes would, at most, constitute her being an accessory after the fact.* (§ 32.)" (*People* v. *Tewksbury, supra,* 15 Cal.3d at p. 962, fn. 7, italics added.) Thus, even though Pedraza helped the robber to escape *with the stolen property,* this court concluded that her liability was no more than that of an accessory after the fact.[2]

The majority does not identify the source of its holding that in robbery the element of asportation continues until the robber has reached a place of temporary safety; it simply concludes, with no attempt to cite any supporting authority, that this is the case. (Maj. opn., *ante,* pp. 1165-1166.) This absence of authority is not surprising, for there appears to be no authority to support the majority's novel and unwarranted holding; certainly, this court has never held that in robbery asportation continues until the robber has reached a place of temporary safety.[3]

It is, however, not difficult to trace the source of the majority's "temporary safety" rule. As the majority points out elsewhere in its opinion, this

---

[2] The majority asserts that in *People* v. *Croy* (1985) 41 Cal.3d 1, 15, footnote 9 [221 Cal.Rptr. 592, 710 P.2d 392], we "expressly left open" the issue presented in this case, and that we "implicitly negated" any suggestion that we had decided the issue in *People* v. *Tewksbury, supra,* 15 Cal.3d 953. (Maj. opn., *ante,* p. 1164 & fn. 6.) In *Croy* we said, without discussing or even citing *Tewksbury,* "we *have no occasion here to determine* whether an individual who has no prior knowledge of a robbery but who, after the property has been taken, knowingly helps a robber—who has not reached a place of safety—make his escape, may properly be classified as an aider and abettor rather than an accessory after the fact." (*People* v. *Croy, supra,* 41 Cal.3d at p. 15, fn. 9, italics added, citations omitted.) By this language we simply said that we were not addressing the issue; we did not "expressly" leave it open. (Compare *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 591, fn. 10 [100 Cal.Rptr. 16, 493 P.2d 480].)

[3] The majority notes the existence of "a long line of Court of Appeal cases . . . holding that mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot." (Maj. opn., *ante,* pp. 1165, fn. 8.) These cases, the majority asserts, "implicitly hold" that asportation continues for a period of time while the stolen property is being carried away. To the contrary, these cases merely establish that the offense of robbery is not committed until all of its elements have occurred.

court has held that for purposes of certain collateral consequences a robbery continues until a place of "temporary safety" is reached. (*People* v. *Laursen* (1972) 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145]; *People* v. *Carroll* (1970) 1 Cal.3d 581 [83 Cal.Rptr. 176, 463 P.2d 400]; *People* v. *Boss* (1930) 210 Cal. 245 [290 P. 881].) But, as the majority recognizes, these cases do not attempt to define the duration of asportation as an element of robbery. Rather, these cases establish the principle that when certain violent acts occur during an escape after the commission of a robbery, they are integrally connected with its commission and thus are treated as part of the offense, regardless of whether the robber is still asporting the stolen property. (See, e.g., *People* v. *Carroll*, *supra*, 1 Cal.3d 581, 584-585 [great bodily injury enhancement properly imposed when defendant inflicts injury on robbery victim after property has been asported but before robber has reached a place of temporary safety]; *People* v. *Bigelow* (1984) 37 Cal.3d 731, 753 [209 Cal.Rptr. 328, 691 P.2d 994, 64 A.L.R.4th 723] [temporary safety is "the test used in felony-murder cases to determine when a killing is so closely related to an underlying felony as to justify an enhanced punishment for the killing"]; see also *People* v. *Laursen*, *supra*, 8 Cal.3d at p. 200, fn. 6; *People* v. *Ketchel* (1963) 59 Cal.2d 503, 523 [30 Cal.Rptr. 538, 381 P.2d 394]; *People* v. *Chavez* (1951) 37 Cal.2d 656, 669-670 [234 P.2d 632].) Because these cases address a problem different than that presented here, the majority properly declines to rely on them as a justification for its new rule. As a consequence, however, the majority is left with a rule conjured out of thin air.

The most fundamental defect in the majority's unprecedented holding is that it leads to results that bear little or no relationship to the level of culpability of the accused, as these hypotheticals will illustrate:

1. A commits a murder. B, who had no prior knowledge of the crime, helps A to escape. Under established law, B is an accessory after the fact. If A robs the murder victim but is *not* in possession of property stolen from the victim when B assists A in escaping, B is still an accessory after the fact. But under the majority rule, if A robs the murder victim *and* is in possession of the stolen property when B assists A in escaping, B is guilty of both robbery and, as a result of the felony-murder rule, first degree murder. (See § 189.)

2. A commits a robbery, and flees directly to the home of B. At the door, A tells B of the robbery and displays the stolen property. B allows A *to hide in the house. Under the majority rule, B is guilty of robbery, because A has not reached a place of temporary safety at the time B lets him in the house. But if, during his flight, A had stopped briefly at a place of temporary safety before going to B's home, B would be an accessory, because the

asportation of stolen property would have been complete at the moment A reached that place of temporary safety. In both instances, B's actions and knowledge of the facts of the robbery are the same; under the majority's holding, B's criminal liability turns on a fact of which he is unaware and which is totally unrelated to his degree of culpability.

3. B sees A push a woman to the ground, grab the woman's purse, and run, pursued by a police officer. B steps in front of the officer, impeding the pursuit of A, who drops the purse but manages to get away. Under the majority's holding, B would be guilty of robbery. But if B had interfered with the officer's pursuit only seconds later, after A had dropped the stolen purse, B would be merely an accessory after the fact because A, the robber, was no longer in possession of the stolen property when B helped A to escape.

If the purse had been stolen in a burglary rather than a robbery, under the majority's holding B would be an accessory regardless of when the burglar dropped the purse, for the simple reason that asportation is not an element of the offense of burglary. (Maj. opn., *ante*, p. 1169.)

4. A and B commit an armed robbery. As they flee, A has the gun while B carries the stolen property. Under the majority rule (see maj. opn., *ante*, p. 1166, fn. 10), if C helps A reach a place of temporary safety, then C is an accessory; but if C assists B, C is guilty of robbery because B was in possession of the stolen property when C facilitated B's escape.

These four examples highlight the anomalies that arise from the majority's attempt to carve out an exception to the general rule, as embodied in the language of section 32 and enunciated in *People* v. *Hoover, supra,* 12 Cal.3d 875, that a person who aids in the escape of a fleeing felon is an accessory after the fact. Whether a robber has reached a place of temporary safety or is carrying property stolen in the robbery at the time of the escape bears the most tenuous relationship to the degree of culpability of the person aiding in the escape. By using these circumstances to draw the line between a principal and an accessory, the majority has fashioned a rule that will dictate substantially different results for persons whose degree of culpability is essentially similar. Rather than creating illusory distinctions, we should apply to the crime of robbery the same rule that applies to other criminal offenses and treat "late joiners" who assist in the escape as accessories after the fact.

As this court explained in *People* v. *Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908], "the central element of the crime of robbery [is] the force or fear applied to the individual victim in order to

deprive him of his property." (See also *Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 351 [211 Cal.Rptr. 742, 696 P.2d 134].) A person who assists a robber in escaping does not apply force or fear to the victim, and does not aid or abet the application of force or fear. Therefore, that person is less culpable than the perpetrator of the robbery, and thus should be held criminally liable only as an accessory after the fact.

In summary, the novel rule set forth by the majority finds no support either in the statutory language or in the previous decisions of this court. It is inconsistent with the rule that a person who aids an escaping felon is an accessory after the fact. And, as illustrated by the examples given above, it will lead to absurd results because criminal liability will bear little or no relationship to the culpability of the offender. In ignoring the requisite relationship between criminal liability and moral culpability, the majority has undermined a foundational principle of criminal justice.

## II

In this case, the trial court gave a lengthy instruction informing the jury that the offense of robbery was not complete until the robbers had reached a place of temporary safety. (Maj. opn., *ante*, pp. 1162-1163.) Seizing on this erroneous instruction, the prosecutor asserted forcefully in his final argument that, regardless of whether defendant had prior knowledge of, or involvement in, planning the robbery, he was guilty of robbery because of his actions during the escape.[4] The prosecutor argued: "[A] robbery is not limited to any particular time or place. . . . [T]he crime of robbery continues until the robbers have reached a relative place of safety; in other words, have ended their flight, at least to a temporary place of safety. . . . [¶] . . . Under the facts, the robbers had not stopped, they had not reached their temporary place of safety. Therefore the robbery was still continuing. . . . [¶] . . . Mr. Cooper at least saw what was going on, realized that an elderly gentleman had been knocked down, realized that a robbery was occurring, in the sense that [codefendant] Parra had the money in his hand, got into the car, still in the commission of the robbery. Because he had not yet—they had not escaped. . . . [¶] At that point in time, that is evidence [that defendant] specifically intended to facilitate the end of this robbery, the flight to get away. And, under those circumstances, . . . he's a principal."

---

[4]The trial court did not make its final decision to give the instruction until after defense counsel had concluded his closing argument. In his initial closing statement to the jury, the prosecutor had argued that defendant's participation in the offense was shown by his actions before the robbery was committed. In his rebuttal, after the trial court's decision to give the instruction at issue, the prosecutor changed his theory of guilt, leaving the defense with no opportunity to counter the prosecutor's rebuttal argument.

In this case, there is strong evidence that defendant was involved in the robbery from its inception. But because of the prosecutor's heavy reliance on the erroneous instruction, I cannot conclude that the instructional error was harmless *beyond a reasonable doubt*. (See *People* v. *Hayes* (1990) 52 Cal.3d 577, 628 [276 Cal.Rptr. 874, 802 P.2d 376].) The Court of Appeal properly determined that the error required reversal of the conviction.

I would affirm the decision of the Court of Appeal.

Mosk, J., and Broussard, J., concurred.