Filed 3/16/21  In re D.H. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re D.H., a Person Coming Under the Juvenile Court Law. | 2d Crim. No. B304277 (Super. Ct. No. YJ39756) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.H.,<br><br>    Defendant and Appellant. | |

D.H. appeals from an order adjudicating him a ward of the court (Welf. & Inst. Code, § 602).  The juvenile court found true the allegation he committed second degree robbery.  (Pen. Code,[1] § 211.)  It placed D.H. home on probation.

_____

[1] Further unspecified statutory references are to the Penal Code.

D.H. contends there was insufficient evidence he aided and abetted the robbery. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

*Incidents*

D.H. drove J.S., T.K., and J.B. to Dick's Sporting Goods in Thousand Oaks. The manager of the store saw J.S., T.K., and J.B. enter the store together. They began grabbing Nike items. As they walked toward the front of the store with "more than 20 items" each, they pushed an employee away. The manager asked one of the other employees to call "911." One of the three said "it's not worth it." They dropped all the items on the floor and left the store. One employee saw the three walk toward a blue car in the parking lot.

The same day, D.H. drove his three friends to a second Dick's Sporting Goods in Oxnard. While D.H. remained in the car, his friends attempted to go into the store, but they were not allowed inside.

Later the same day, J.S. approached a woman, V.C., in a parking lot at a market in Oxnard. J.S. asked V.C. for money several times. He then tried to grab her purse. The two fought over the purse, and V.C. fell to the ground. The purse strap broke; J.S. grabbed the purse; and he ran away. V.C. and bystanders chased J.S., but he got into a car that had stopped in the middle of "the driveway area." The "moment [J.S.] jumped in, [the car] took off." V.C. described the car as a "dark car" with a paper license plate.

*Investigation*

Ventura County Sheriff Deputies received three calls regarding the incidents at the two Dick's Sporting Goods and the market in Oxnard. The calls reported "multiple suspects" driving

in a dark blue Chevy with Cerritos paper plates. Patrol deputies stopped a car which matched the description. D.H. was driving the car. T.K. was in the front passenger seat, and J.S. and J.B. were in the back seat.

D.H. told a deputy that they planned to go to an "unknown beach" in Ventura, but they decided not to go because they did not have proper clothing. D.H. said he "had not stopped anywhere else in Ventura County . . . between the beach and the traffic stop" and "there was nothing else that had happened."

An Oxnard police officer interviewed V.C. at the market and drove her to D.H.'s location for an in-field identification. V.C. identified J.S. as the person who grabbed her purse. She also identified the Chevy as the car that J.S. "jumped into" at the market parking lot. She identified her makeup brushes in the backseat of the Chevy.

Another police officer found V.C.'s purse near the 101 South highway on-ramp. V.C.'s wallet, cash, and car keys were missing.

At a later interview, D.H. said he was the only person who drove the Chevy that day. He said he drove from Los Angeles County to Ventura to go to the beach. When asked which beach, he said he was not sure. He admitted driving to Dick's Sporting Goods to buy swim trunks. He said no one bought swim trunks because his friends were not allowed into the store. He denied driving to the market in Oxnard.

*Defense*

D.H. testified that he drove from Los Angeles to Ventura County to go to the beach. He admitted driving to both Dick's Sporting Goods so that his friends could get swim trunks, but he stayed inside the car. When his friends did not get swim

3

trunks, he began driving back to Los Angeles. They never went to the beach.

D.H. admitted stopping at the Oxnard market. He said he stopped at the market because J.S. wanted to use the bathroom. He testified that he did not know J.S. stole the purse until the police pulled them over.

## DISCUSSION

D.H. contends there was insufficient evidence he aided and abetted the robbery of V.C. We disagree.

We review the juvenile court's true finding for sufficiency of evidence. We review "the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 605.) "'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 943.)

A person who aids and abets a crime is guilty of that crime. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) To prove a person is an aider and abettor, the prosecution must show that the defendant "'acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." [Citation.] When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the

4

perpetrator's commission of the crime."  [Citation.]'  [Citation.]"
(*Id.* at p. 1118.)

In *People v. Cooper* (1991) 53 Cal.3d 1158, 1165
(*Cooper*), our Supreme Court held under similar circumstances
that a getaway driver may be liable for robbery as an aider and
abettor if they formed an intent to facilitate commission of the
robbery "*prior to or during the carrying away of the loot to a place
of temporary safety*."  There, the defendant drove his two
codefendants to a parking lot of a shopping center.  (*Id.* at p.
1161.)  While the defendant was in the car, his codefendants
forcefully stole a wallet from a shopper.  The codefendants then
fled to the car, which was moving with two of its doors open.
(*Ibid.*)  After the codefendants "jumped inside, defendant
hurriedly drove away."  (*Ibid.*)  The defendant argued the
evidence was insufficient to show he had prior knowledge or
intent to aid in the robbery; but rather, the evidence, at best,
showed he was an accessory after the fact.  (*Id.* at p. 1162.)  The
court disagreed.

The court reasoned that for the purpose of
determining aider and abettor liability, the robbery continues
"until all acts constituting the offense have *ceased*."  (*Cooper*,
*supra*, 53 Cal.3d at p. 1164.)  Robbery requires an act of
asportation or "carrying away the loot."  (*Id.* at p. 1165.)
Asportation is not "confined to a fixed point in time" and may
continue "as long as the loot is being carried away to a place of
temporary safety."  (*Ibid.*)  Therefore, "a getaway driver who has
no prior knowledge of a robbery, but who forms the intent to aid
in carrying away the loot during such asportation, may properly
be found liable as an aider and abettor of the robbery."  (*Id.* at p.
1161.)

5

Here, there is sufficient evidence to show that D.H. formed an intent to facilitate in the robbery prior to or during the commission of the crime. After J.S. grabbed the purse from V.C., D.H. stopped his car in the middle of "the driveway area" of the market parking lot and D.H. "jumped in." The "moment [J.S.] jumped in" the car, D.H. "took off."

Moreover, there is other evidence to support a finding that D.H. knew about and intended to aid the robbery. "Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense." (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094.) Earlier the same day, D.H. drove his friends from Los Angeles to a Dick's Sporting Goods in Thousand Oaks, where his friends attempted to steal items. When their plan failed, D.H. drove his friends to a second Dick's Sporting Goods in Oxnard. A juvenile court could reasonably infer that D.H. and his friends shared a common plan to steal with D.H. acting as the getaway driver.

After the robbery, D.H. lied to law enforcement officers. He first told a deputy that he drove from Los Angeles to Ventura County to go to an unknown beach and that he had not stopped anywhere else in Ventura County. Later, during an interview, D.H. told a deputy that he went to Dick's Sporting Goods, but denied going to the Oxnard market. Then at trial, he admitted he went to the market. D.H.'s false or inconsistent statements reflect his consciousness of guilt. (See *People v. Flores* (2007) 157 Cal.App.4th 216, 221 [giving false statement to the police is a relevant factor to determine consciousness of guilt].) Substantial evidence supports the juvenile court's true finding.

6

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

7

Irma J. Brown, Judge

Superior Court County of Los Angeles

_____

        Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stacy Schwartz and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.