Filed 8/2/22  P. v. Lopez CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060492 |
| v. | (Super. Ct. No. 19WF2828) |
| FABIAN LOPEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge.  Affirmed.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Robin Urbanski, Acting Assistant Attorney General, Alana R. Butler and Arian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Fabian Lopez appeals from his conviction after a jury trial on two counts of second degree robbery and several related enhancements. (Pen. Code, §§ 211, 212.5, subd. (c), 12022, subd. (b)(1).)[1] He was sentenced to four years with appropriate credits. He claims on appeal that there was insufficient evidence to convict because no eyewitness or DNA evidence linked him to either robbery. Under the substantial evidence standard of review, we find the evidence sufficient to support his convictions on both counts, and we therefore affirm the judgment.

I

FACTS

On the evening of November 19, 2019, Walaa Y. was working at a liquor store in Huntington Beach. Two individuals entered, one of whom was wearing a Santa hat and a bandana covering his face. He pointed a knife at Walaa and told her to give him all her money. Walaa thought he was joking at first, but the man in the Santa hat repeated the demand, and the second man pointed a gun at her. She was "really scared." She opened the cash register and the two men took all of the money, which was $820 in cash, and fled, driving away in a dark gray sedan driven by a third person. The car had been backed into a parking space.

Walaa described the man in the Santa hat as being in his 30's, having bronze skin and dark eyes, five feet seven inches tall and 160 pounds. The knife blade was three or four inches long. She described the second man as taller and "a little chubbier" than the first.

Surveillance video showed the man had his face and neck covered by the bandana. The video also showed the first man was wearing black pants with a white logo on the side, black Nike shoes with white Nike "swooshes" and white shoes. It also

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

captured the license plate of the car they arrived and left in, which was a gray Volkswagen Jetta. A records search revealed that Lizette Olivarez was the owner and the surveillance footage showed that she drove the car during the robbery.

Two weeks later, a license plate reader captured the Jetta belonging to Olivarez at a motel in Santa Ana. Police visited the scene and followed the car when it left the motel at approximately 3:00 p.m. The car was driven by Olivarez with defendant in the passenger seat. They drove around quite a bit. Olivarez stopped and parked at two different liquor stores, which police believed they might be casing. Only defendant left the car at both stops. The car was then followed to a shopping center in Santa Ana, where a second robbery took place at a perfume store.

Susanna G. was working at the store and Rosie L., the owner, and Yolanda L., her sister, were also present. Olivarez entered the store and defendant entered soon after, wearing a black hoodie. The officers surveilling Olivarez's car identified defendant. Defendant eventually left the store.

Olivarez selected several perfumes, and stating she wished to pay with a credit card, said she had to go to her car to get her identification. Olivarez returned, threw several Visa gift cards and a credit card on the counter, and ran out of the store with three bottles of cologne. The credit card was not in her name. Susanna yelled to Yolanda that the woman was stealing and to "grab her," and Yolanda followed her outside. Someone pointed a gun at Yolanda, but she was not certain if it was a man or a woman.

The officers conducting the surveillance saw Olivarez get into the passenger seat, and the car, which had been backed into a parking space, immediately left the lot with defendant driving. The officers continued to follow. Defendant drove at high speed with the lights off. His driving was erratic, which led some of the officers to stop their pursuit and return to the motel. Another officer lost sight of the vehicle temporarily but saw it pull into the motel lot.

3

Later that night, Olivarez, defendant, and another man entered the car and drove to a liquor store, where officers detained them. They were arrested there. Defendant was wearing the same hoodie he had worn inside the perfume store. He was also wearing black pants with a white logo on the side, and black Nike shoes with white swooshes and soles. Defendant told officers that Olivarez was his friend and denied being at the perfume store, stating he had been at the motel all day.

A search of the motel room found a BB gun that looked like a handgun, merchandise tags, and broken anti-theft devices. In the Jetta, officers found a backpack containing defendant's wallet and a bottle of the same cologne stolen from the perfume store. Later testing of the cards Olivarez left on the counter at the perfume store showed defendant was "a possible major contributor" of touch DNA.

Defendant was charged with two counts of robbery, with count one relating to the liquor store and count two relating to the perfume store. As to count one, it was further alleged that defendant personally used a deadly weapon, a knife. (§§ 211, 212.5, subd. (c), 12022, subd. (b)(1).) At the conclusion of a jury trial, defendant was found guilty on both counts and the knife enhancement was found true. He was sentenced to four years, along with various fines and fees, and given appropriate credits. Defendant now appeals.


II

DISCUSSION

Defendant argues there is insufficient evidence to sustain the conviction for either count, specifically, as a direct perpetrator for count one or as an aider and abettor on count two.

Both convictions were for robbery, which is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) A

4

robbery is not complete until the perpetrator reaches a place of temporary safety. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.)

We review claims of insufficiency of the evidence under the substantial evidence standard. "Our role in considering an insufficiency of the evidence claim is quite limited. We . . . review the record in the light most favorable to the judgment [citation], drawing all inferences from the evidence which supports the . . . verdict." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Substantial evidence is "evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) We "presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*Ibid.*)

The same standard applies to cases in which the prosecution relies primarily on circumstantial evidence, where we must also accept logical inferences that might be drawn from the circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) We do not reweigh the evidence or assess the credibility of witnesses. (*People v. Nelson* (2011) 51 Cal.4th 198, 210; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) As defendant acknowledges, he bears a heavy burden when asserting insufficient evidence to support the conviction. Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate "'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331-332.)

Defendant examines the evidence of each robbery separately to reach the conclusion that the evidence is insufficient, focusing on evidence that is *not* present. But we consider the record as a whole. "The 'whole record' includes 'the entire picture of the defendant put before the jury' and is not limited 'to isolated bits of evidence selected by the respondent.'" (*People v. Boatman* (2013) 221 Cal.App.4th 1253, 1262.)

Viewing the record as a whole, it is the similarities between the two robberies that do much of the heavy lifting here. In both robberies, Olivarez's car was used. In both, there was evidence that the perpetrator in question was wearing black pants with a white logo on the side and certain Nike shoes. Defendant was arrested with Olivarez a few hours after the perfume store robbery, wearing the same hoodie as the person in the video. The description given by Walaa matched defendant's general description. Same description, same shoes and pants, same getaway car. The jury also had surveillance video and/or still photos from the robberies and photos of defendant after his arrest to compare his clothing and build. The jury had sufficient evidence, under the substantial evidence standard, to find defendant was both the man in the Santa hat and present at the perfume store robbery.

We disagree with defendant that this case bears any similarity to *People v. Sanford* (2017) 11 Cal.App.5th 84. The "unusual circumstances" of that case included a robbery committed by a group of multiple men, including two getaway drivers. (*Id.* at pp. 85-86, 88-89.) The defendant's conviction was largely based on the presence of three men in the getaway car, which was pulled over by the police some 10 minutes after the robbery. (*Id.* at p. 93.) There was "uncontroverted evidence" that the original getaway driver was absent at that time, and none of the car's occupants came close to matching the only witness description of the driver. (*Id.* at p. 94.) Further, none of the stolen items or disguises were present, leading the court to the conclusion the car had stopped somewhere between the robbery and the time of the traffic stop. (*Ibid.*) The facts are simply too different to be useful here.

As for the perfume store robbery, there was also sufficient evidence defendant aided and abetted Olivarez's robbery. A person is a direct aider and abettor if he or she: "'(i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the

6

crime.'" (*People v. Delgado* (2013) 56 Cal.4th 480, 486.) A getaway driver is an aider and abettor of the robbery if he or she has or forms the intent to facilitate the robbery at any time before or during the robbery. (*People v. Cooper*, *supra*, 53 Cal.3d at p. 1165.)

Defendant, who is on surveillance video wearing the same distinctive hoodie he was arrested in and seen at the robbery by numerous witnesses, was unquestionably present. There was testimony he drove with Olivarez to the scene, backed the car into the parking space, and threatened Yolanda with a gun to facilitate their escape. He then drove erratically, with his lights off, to get away from the scene as quickly as possible. His wallet and a bottle of the stolen cologne were in the same backpack found in the Jetta. Defendant's denial of his presence to police demonstrates a consciousness of guilt. (*People v. Redrick* (1961) 55 Cal.2d 282, 287-288.) Taken together, this is sufficient evidence to support his conviction on count two.

III

DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

7