Filed 6/28/22  P. v. Garcia CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ALBERTO JOSEPH GARCIA,<br><br>　　　Defendant and Appellant. | A162765<br><br>(Contra Costa County<br>Super. Ct. No. 50803163) |

In 2009, a jury found Alberto Joseph Garcia guilty of the first degree murder of a victim who died from four close-range shotgun blasts.  (*People v. Garcia* (Aug. 31, 2012, A126353) [nonpub. opn.]; Pen. Code, § 187, subd. (a); undesignated statutory references are to the Penal Code.)  But the jury found not true an allegation Garcia had personally used or intentionally discharged a firearm.  (§ 12022.53, subd. (d).)  In 2019, Garcia petitioned for resentencing under section 1170.95, which the trial court denied after finding he acted with implied malice by shooting the victim, or alternatively, he aided and abetted the actual shooter with an intent to kill.

On appeal, Garcia argues the jury's verdict on the firearm enhancement precluded the trial court from finding he was the actual shooter, and there was insufficient evidence to support the alternative finding that he aided and abetted the murder with an intent to kill. We affirm.

1

# BACKGROUND

The victim and Barbara Washburn lived in an apartment in the East Bay. Washburn became acquainted with Garcia through her son, Joaquin Agredano. Garcia and Agredano were both friends with the victim. On July 20, 2007, Washburn and Agredano picked up Garcia to drive to San Francisco. On the way, Garcia stopped to collect a bag containing a shotgun from an acquaintance's home. During the drive and while at a San Francisco bar, Washburn complained about the victim's treatment of her. Garcia noted he did not like the victim and expressed the need to confront him. When the three drove back to the East Bay, Garcia demanded to be taken to the victim's house.

That night, a neighbor heard people walking up the stairs to the victim's apartment, rapid knocking on the door, and a female voice stating, "Open the door." The neighbor then heard the female walk down the stairs and state, "this is a bunch of [shit]." Later, two people walked up the stairs again. They said, "open the door." There was a sound of a door being kicked in and then gunshots. Washburn saw Garcia run back down the stairs to the car, and he was laughing. The victim was found with close-range shotgun wounds to his chest, hip, heel, and forearm, and he died from the loss of blood from the shotgun wounds to his lungs and blood vessels.

Garcia, Washburn, and Agredano fled to Reno, where Garcia's mother lived. Garcia took the shotgun with him and said, "I have to go hide this from my mother." Garcia remained in Reno while Washburn and Agredano drove back to San Francisco.

Garcia was ultimately charged with unlawfully and willfully with malice aforethought murdering the victim. (§ 187, subd. (a).) The complaint further alleged Garcia intentionally and personally discharged a firearm

2

causing great bodily injury and death to the victim. (§ 12022.53, subds. (b), (c), (d).) During a jury trial, Garcia's girlfriend recounted Garcia's statements that he and Agredano had gone to the victim's apartment, they knocked on the victim's door, someone kicked in the door, and "they shot" the victim. Garcia, according to his girlfriend, was on the run, and he asked her to join him.

The trial court instructed the jury with four separate murder theories: "(1) defendant was the actual perpetrator or an aider and abettor in the commission of murder; (2) he aided and abetted assault with a deadly weapon and murder was a natural and probable consequence of the assault; (3) he aided and abetted brandishing a firearm and murder was a natural and probable consequence of this crime; and (4) he conspired to commit the crime of brandishing a firearm or assault with a deadly weapon and murder was perpetrated by a coconspirator in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of that conspiracy."

The jury convicted Garcia of first degree murder, but it found not true the allegation that he personally used a firearm during the commission of the crime. (§§ 187, subd. (a), 12022.53, subd. (d).) Although he was originally sentenced to 25 years to life in prison, the trial court, upon a writ of habeas corpus, reduced Garcia's conviction to second degree murder in accordance with *People v. Chiu* (2014) 59 Cal.4th 155 and resentenced him to 15 years to life.

In January 2019, Garcia filed a section 1170.95 petition for resentencing. The trial court eventually held an evidentiary hearing in April

3

2021,[1] but the parties did not submit any new or additional evidence. Thus, the court relied primarily on trial transcripts and the jury's verdict to find beyond a reasonable doubt that Garcia was the principal perpetrator of the murder. The court concluded Garcia was determined to confront the victim after hearing about his treatment of Washburn, and Garcia intentionally fired at the victim with a shotgun at close range. In the alternative, the court also concluded Garcia aided and abetted in the murder, noting Garcia and Agredano were together on the night of the murder, they both participated in the killing, and Garcia admitted to his girlfriend they shot the victim. Hence, the court found Garcia ineligible for resentencing relief.

## DISCUSSION

Due to recent amendments to the Penal Code, a participant in a specified felony is liable for murder only if the person was the actual killer, aided and abetted the actual killer with the intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life (§ 189, subds. (e)(1)–(3)). (Stats. 2018, ch. 1015, §§ 2–4 [eliminating the natural and probable consequences doctrine and limiting the scope of the felony-murder rule].) A defendant convicted of murder under the natural and probable consequences doctrine or other theory under which malice is imputed solely based on the defendant's participation in a crime may file a petition with the sentencing court to vacate the conviction and be resentenced. (§ 1170.95, subd. (a).) Petitioners must meet three eligibility

---

[1] In a prior opinion in this case, this court reversed the trial court's order summarily denying Garcia's section 1170.95 petition for resentencing without an evidentiary hearing to determine whether he is entitled to relief. (*People v. Garcia* (Jan. 19, 2021, A157905) [nonpub. opn.].) We instructed the court to issue an order to show cause and to hold an evidentiary hearing to determine whether Garcia was entitled to resentencing under section 1170.95. (*Ibid.*)

4

criteria: (1) the prosecution proceeded under the natural and probable consequences doctrine; (2) the petitioner was convicted of murder following a trial; and (3) the petitioner could not be convicted of murder because of the changes to section 188 or 189. (§ 1170.95, subd. (a)(1)–(3); *People v. Lewis* (2021) 11 Cal.5th 952, 959–960.) If the petitioner makes a prima facie case for eligibility, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subds. (c), (d)(1); *Lewis*, at p. 960.) At the hearing, the prosecution must prove beyond a reasonable doubt that the petitioner is ineligible for resentencing — that the petitioner was the actual killer, aided and abetted the actual killer with the intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 1170.95, subd. (d)(3); *Lewis*, at p. 960.)

Orders denying section 1170.95 relief following a hearing are reviewed for substantial evidence — " 'that is, evidence that is reasonable, credible, and of solid value—that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657–658; *People v. Williams* (2020) 57 Cal.App.5th 652, 663.) The evidence is reviewed " 'in the light most favorable to the prosecution and [we] presume in support of the [order] the existence of every fact the [superior court] could reasonably have deduced from the evidence.' " (*Williams*, at p. 663.)

Relying primarily on *People v. Vivar* (2021) 11 Cal.5th 510, Garcia first contends the trial court's ruling must be reviewed de novo because the court solely reviewed the documentary record and made no credibility determinations of live witness testimony. We disagree. *Vivar* adopted a de novo standard of review for evaluating a trial court's decision on a section

1437.7 motion to vacate a conviction due to inadequate advice from counsel regarding immigration consequences because the questions at issue were mixed questions that are "predominantly questions of law." (*Vivar*, at pp. 524, 517.) In contrast, the question of whether a defendant acts with malice or reckless indifference to human life — issues addressed in a section 1170.95 petition — "is predominately a factual determination" for which deference to the trial court's factual findings is required. (*People v. Clements* (2022) 75 Cal.App.5th 276, 301; see also *People v. Perez* (2018) 4 Cal.5th 1055, 1066 [independent review of factual findings unwarranted even though trial court relied solely on the record of conviction to determine defendant's entitlement to reduction in certain circumstances under Proposition 36].) Garcia's additional cited cases do not compel a different result.

Garcia next argues collateral estoppel precluded the trial court from finding he was the actual shooter, and thus guilty of implied malice murder, because the jury found not true the firearm enhancement — i.e., the allegation he personally used and intentionally discharged the firearm resulting in the victim's death. Resolving whether collateral estoppel principles apply in this case or whether section 1170.95 allows relitigation of factual questions settled by a jury is unnecessary here. The record supports the court's alternative finding that Garcia aided and abetted the victim's murder.[2] (*People v. Marquez* (1992) 1 Cal.4th 553, 578 ["the trial court's ruling must be upheld if there is any basis in the record to sustain it"].)

---

[2] We reject Garcia's brief assertion that the trial court erred in concluding that there was evidence beyond a reasonable doubt that he was both the actual shooter and an aider and abettor. There is no indication in the record the court applied the improper standard of proof — the court expressly concluded Garcia was ineligible for resentencing beyond a reasonable doubt. Nor were the court's findings inconsistent. "When

An aider and abettor is considered a principal in a crime.  (§ 31.)
"A person aids and abets the commission of a crime when he or she, (i) with
knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent
or purpose of committing, facilitating or encouraging commission of the
crime, (iii) by act or advice, aids, promotes, encourages or instigates the
commission of the crime."  (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.)
Factors to consider when determining whether a person aided and abetted
the commission of a crime " 'include presence at the scene of the crime, failure
to take steps to attempt or prevent the commission of the crime,
companionship, flight, and conduct before and after the crime.' " (*People v.
Garcia* (2008) 168 Cal.App.4th 261, 273.)

There is ample evidence of those factors here.  Garcia appeared to
instigate the commission of the murder.  The night before the shooting,
Agredano accompanied Garcia to retrieve a shotgun.  Garcia expressed the
need to confront the victim.  When driving back to the East Bay from San

---

two or more persons commit a crime together, *both* may act in part as the
actual perpetrator *and* in part as the aider and abettor of the other, who also
acts in part as an actual perpetrator."  (*People v. McCoy* (2001) 25 Cal.4th
1111, 1120, first italics added.)  "The aider and abettor doctrine merely
makes aiders and abettors liable for their accomplices' actions as well as their
own. It obviates the necessity to decide who was the aider and abettor and
who the direct perpetrator or to what extent each played which role."  (*Ibid*.)
In any event, the question here is whether Garcia is ineligible for
resentencing beyond a reasonable doubt.  (§ 1170.95, subd. (d)(3).)  Even
assuming the court's reasoning — that Garcia could be both the actual
shooter or in the alternative an aider and abettor — was erroneous, reversal
is unwarranted.  (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [" ' "If right upon
any theory of the law applicable to the case, [the trial court decision] must be
sustained regardless of the considerations which may have moved the trial
court to its conclusion" ' "].)  As discussed, substantial evidence supports the
trial court's conclusion Garcia aided and abetted the actual killer with the
intent to kill.

Francisco, Garcia demanded Washburn and Agredano take him to the victim's apartment, and Washburn complied — thus, Garcia's presence at the scene of the crime was not happenstance. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [finding that defendant aided and abetted supported by evidence they "did not independently happen by the scene of the crime"].) When the three individuals arrived at the victim's apartment complex, Garcia got out of the car with a bag containing the shotgun, thus supporting a reasonable inference he facilitated the murder by bringing a weapon.

The acts and the circumstances of the killing also demonstrate Garcia intended to kill the victim — desiring the victim's death or knowing to a substantial certainty death will occur. (§ 187, subd. (a); *People v. Gentile* (2020) 10 Cal.5th 830, 844 ["when a person directly aids and abets a murder, the aider and abettor must possess malice aforethought"]; *People v. Smith* (2005) 37 Cal.4th 733, 741 [intent to kill may be inferred from defendant's acts and circumstances of the crime].) Garcia admitted he and Agredano kicked in the victim's door, the victim came to the door, and they shot the victim — they co-participated in the murder. This was not an unintended escalation of brandishing or assault with a deadly weapon. Garcia told his girlfriend that the victim "had to be dealt with 'cause he fucked up.' " Police found the victim lying on the floor of his apartment with gunshots in his chest, hip area, heel, and forearm. That the shots were fired at close range supports an inference of an intent to kill. (*People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224 [clear intent to kill demonstrated by firing six shots from approximately 25 feet away from the victims].)

Evidence of Garcia's conduct after the shooting further supports the conclusion he aided and abetted the murder. (*People v. Garcia, supra,* 168 Cal.App.4th at p. 273.) When Garcia got back into the car after the

8

shooting, he was laughing and asking Washburn what the victim sounded like. He fled from the scene with Washburn and Agredano. (*Ibid.* [flight is a relevant factor for assessing whether a person aided and abetted the commission of a crime].) He took the shotgun with him to his mother's home in Reno and noted, "I have to go hide this from my mother." Taken together, these facts support the trial court's finding Garcia knew and shared the perpetrator's intent to commit the murder, and he engaged in conduct to achieve that goal. (*People v. Cooper, supra*, 53 Cal.3d at p. 1164.)

We reject Garcia's argument, relying on *People v. Ramirez* (2021) 71 Cal.App.5th at page 970, the trial court was required to consider his youth at the time of the offense when assessing whether he had the requisite mental state necessary for aiding and abetting the murder. A " 'defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life,' " an inquiry regarding felony murder. (*Id.* at p. 987.) Here, the court assessed whether Garcia aided and abetted a murder, not the inquiry related to a felony-murder conviction. To the extent Garcia urges us to reject the court's conclusion as based on evidence that conflicted with certain witness testimony, this argument ignores the standard of review. (*People v. Young* (2005) 34 Cal.4th 1149, 1181 ["[r]esolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We defer to the court's resolution of evidentiary conflicts here.

## DISPOSITION

The order denying the section 1170.95 petition is affirmed.

9

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.


A162765