Filed 5/16/23  P. v. Lozano CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B316659 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA044143) |
| v. | |
| PHILLIP LOZANO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Martin L. Herscovitz, Judge.  Affirmed.

Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant and appellant Phillip Lozano was convicted of second degree murder in 2007. Lozano now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1] After an evidentiary hearing, the trial court concluded that Lozano was not eligible for resentencing because he was a direct aider and abettor who acted with express and implied malice. Lozano argues that the trial court's findings are not supported by substantial evidence. We disagree and affirm the denial of Lozano's petition for resentencing.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. The underlying offense[2]

In October 2003, Lozano and codefendant Glenn Terrell arrived unannounced at the apartment of Enrique Briseno. Briseno lived with his mother, Dora Amaya. Briseno and Lozano had known each other for many years, and Briseno considered Lozano a friend. Briseno also knew Terrell because they had previously bought and sold marijuana from each other.

---

[1] All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, former section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We therefore refer to the law formerly codified at section 1170.95 as section 1172.6 for the remainder of this opinion.

[2] We take our statement of facts from evidence admitted at the 2007 trial, specifically Lozano's recorded police interview, the trial testimony of the surviving victim, and the testimony of the medical examiner who conducted the second victim's autopsy.

Lozano told police that he and Terrell planned to go to Briseno's home to ask him to loan Terrell money, and Terrell planned to punch Briseno and take his marijuana if he refused. Lozano and Terrell brought Terrell's gun with them, but left it in the car when they went inside.

When they arrived at the apartment, Lozano and Terrell told Briseno they wanted to buy a pound of marijuana. Briseno told them he did not have the requested amount of marijuana for sale, but invited them inside to smoke. Briseno, Lozano, and Terrell went into Briseno's bedroom, where they sat and smoked marijuana. A few minutes later, Terrell stood up, sprayed Briseno in the face with pepper spray, and stabbed him multiple times with an ice pick. Although Lozano saw Terrell stab Briseno, causing bleeding, he remained seated and did nothing. Briseno heard Lozano say something like, "What are you doing? That's enough."

Amaya then appeared at the door of Briseno's bedroom. She yelled at Terrell to stop stabbing Briseno. Briseno told his mother to run. Terrell followed Amaya out of the bedroom and into the living room, where he repeatedly stabbed her. Briseno, who felt "paralyzed" and could not move, heard his mother in the living room screaming " 'stop.' " At some point, Lozano also went into the living room, and Briseno heard Lozano say, "Let's go already." Lozano recalled telling Terrell that the stabbing of Amaya was not "supposed to happen," and, "I can't do this."

While Terrell stabbed Amaya, Lozano returned to Briseno's bedroom. He asked Briseno for money and searched through Briseno's pants. Lozano took a three-ounce bag of marijuana from Briseno's room and left.

The knife Terrell was using to stab Amaya broke, so when Lozano returned to the living room, Terrell told Lozano to help him and get him "something." Lozano went to the kitchen, retrieved a "barbecue fork" from the counter, and gave it to Terrell. Lozano told police that he knew Terrell was going to stab Amaya with the fork.

While Terrell stabbed Amaya with the fork, Lozano left the apartment and put the marijuana in his car. According to Lozano, Amaya was "most definitely alive" when he left the apartment. Terrell came out soon after, and Lozano and Terrell drove away. The police subsequently found Amaya face down with a "carving fork" in her back. Later that same day, police arrested Lozano and Terrell at Terrell's residence.

At trial, the medical examiner who conducted the autopsy on Amaya testified that she had multiple stab wounds. He opined that a knife wound that had penetrated one of Amaya's lungs was the fatal wound. According to the medical examiner, although the wound was fatal, it was "most unlikely" Amaya died instantly. Instead, death from the wound "could occur within a time frame of 15 to 30 minutes."

## II.    Lozano's conviction, sentence, and direct appeal

In 2006, Lozano and Terrell were charged with the murder of Amaya (§ 187, subd. (a)), attempted murder of Briseno (§§ 664, 187, subd.(a)), first degree residential robbery of Briseno (§ 211), and attempted first degree residential robbery of Amaya (§§ 664, 211).

In 2007, a jury found Lozano guilty of second degree murder of Amaya and of first degree robbery of Briseno. It acquitted Lozano of the other charges. Among other things, the jury was instructed on aiding and abetting and felony murder.

4

The court sentenced Lozano to 15 years to life in prison. We affirmed Lozano's conviction on direct appeal in *People v. Lozano* (Dec. 18, 2008, B201001) [nonpub. opn.].

### III. Lozano's petition for resentencing and evidentiary hearing

In January 2019, Lozano filed a petition for resentencing under former section 1170.95. The trial court appointed counsel for Lozano, ruled that Lozano established a prima facie case of eligibility for relief, and issued an order to show cause.

After briefing by both parties, the trial court—the same judge who presided over the original trial—held an evidentiary hearing. The trial court did not consider new evidence, but relied on the trial transcript, preliminary hearing transcripts, the trial exhibits, and a recording of Lozano's statement to the police. The trial court found the evidence proved beyond a reasonable doubt that Lozano acted as an aider and abettor in the murder of Amaya, and that he harbored both express and implied malice. The court therefore denied Lozano's petition for resentencing.

Lozano filed a timely notice of appeal.

## DISCUSSION

Lozano's only argument on appeal is that the trial court's decision is not supported by substantial evidence. Specifically, Lozano claims there is insufficient evidence of both express and implied malice. As we explain below, there is substantial evidence that Lozano aided and abetted the murder of Amaya with implied malice. We therefore need not reach the question of whether Lozano acted with express malice.

### I. Senate Bill No. 1437 and section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine

5

as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also created a procedure, now codified at section 1172.6, for a person convicted of murder under the former law to be resentenced if he or she could no longer be convicted of murder under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) A defendant commences that procedure by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law. (*Strong*, *supra*, 13 Cal.5th at p. 708.) If the trial court receives a petition that establishes a prima facie case for relief, it must appoint counsel for the petitioner, if requested. The trial court also must issue an order to show cause and hold an evidentiary hearing. (*Ibid.*; § 1172.6, subds. (b)(3), (c), & (d)(1).) At the evidentiary hearing, it is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1172.6, subd. (d)(3); *Strong*, at pp. 708-709; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951 (*Vargas*).) If the trial court finds beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189, the

6

petitioner is ineligible for relief under section 1172.6. (*Strong*, at pp. 708-709; *Vargas*, at p. 951.)

## II.    Standard of review

We review the trial court's findings for substantial evidence. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022 (*Owens*).) Under this standard, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Vargas*, *supra*, 84 Cal.App.5th at p. 951; *People v. Clements* (2022) 75 Cal.App.5th 276, 298 (*Clements*).) We do not resolve credibility issues or evidentiary conflicts. (*Owens*, at p. 1022.) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Before we may set aside a trial court's order, it must be clear that " ' "upon no hypothesis whatever is there sufficient evidence to support [it]." ' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

## III.    Substantial evidence supports the trial court's finding that Lozano is ineligible for relief because he was a direct aider and abettor who acted with malice

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) Malice may be express or implied. (§ 188, subd. (a).) "It is express when there is a manifest intent to kill (§ 188, subd. (a)(1)); it is implied if someone kills with 'no considerable provocation ... or when the circumstances attending the killing show an abandoned and malignant heart.' (§ 188, subd. (a)(2))." (*Gentile*, *supra*, 10 Cal.5th at p. 844.) "The primary difference between express

7

malice and implied malice is that the former requires an intent to kill but the latter does not." (*People v. Soto* (2018) 4 Cal.5th 968, 976.)

An aider and abettor's "guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117, original italics.) "A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.)

For aiding and abetting liability on a theory of express malice murder to be imposed, the direct aider and abettor must share the actual perpetrator's intent to kill. (*McCoy*, *supra*, 25 Cal.4th at pp. 1118 & fn. 1 ["the aider and abettor must know and share the murderous intent of the actual perpetrator"].)

For aiding and abetting liability on a theory of implied malice murder to be imposed, a direct aider and abettor must, by words or conduct, aid the perpetrator's commission of a life-endangering act with the "knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life," and the aider and better must act "in conscious disregard for human life." (*People v. Powell* (2021) 63 Cal.App.5th 689, 713 (*Powell*), italics omitted.) In other words, under current law, "a direct aider and abettor of the killing who knew that his (or her) conduct endangered the life of another and acted with conscious disregard for life, may be guilty of second

degree murder." (*People v. Langi* (2022) 73 Cal.App.5th 972, 979.) While Senate Bill 1437 eliminated natural and probable consequences liability for second degree murder based on imputed malice, implied malice remains a valid theory of second degree murder liability for an aider and abettor. (*Gentile*, *supra*, 10 Cal.5th at p. 850; *Clements*, *supra*, 75 Cal.App.5th at p. 298 [Senate Bill 1437 maintained the viability of murder convictions based on implied malice, "and the definition of implied malice remains unchanged"].)

Viewing the evidence in the light most favorable to the trial court order, the record contains substantial evidence that Lozano aided and abetted the killing of Amaya with implied malice. Lozano aided Terrell in an act dangerous to human life and with a conscious disregard for Amaya's life. (*Powell*, *supra*, 63 Cal.App.5th at p. 713; *McCoy*, *supra*, 25 Cal.4th at p. 1122.) According to Lozano's statements to police, he watched Terrell repeatedly stab Briceno. Then he saw Terrell stabbing Amaya. When the knife Terrell was using to stab Amaya broke, Terrell told Lozano to help him and get him "something," so Lozano found a carving fork and handed it to Terrell. Lozano knew Terrell would use the fork on Amaya, as evidenced by his statement: "I knew … he had to stab her with that. He wasn't just going to hold it." Lozano also knew Amaya was still alive when he left the apartment, yet he left without trying to stop the attack or otherwise assist Amaya. In sum, there is substantial evidence to support the trial court's finding that Lozano aided and abetted the killing of Amaya with implied malice. (See *Powell*, *supra*, 63 Cal.App.5th at p. 713; *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599 ["It is well settled that the presence at the scene of the crime and failure to prevent it, companionship

9

and conduct before and after the offense, including flight, are relevant to determining whether a defendant aided and abetted in the commission of the crime"].)

Lozano argues his statement to police that he retrieved the fork for Terrell because he feared for his own life established his lack of intent to kill Amaya. He also points to evidence that when he first saw Terrell stabbing Amaya, he told Terrell that the stabbing was "not supposed to happen." However, on appeal we do not reweigh the evidence or reassess the trial court's credibility determinations. Moreover, even unintentional deaths, or deaths that happen after a defendant makes a statement of discouragement to the perpetrator, may support a finding of direct aiding and abetting with implied malice. (*Clements*, *supra*, 75 Cal.App.5th at pp. 300–301 [statement by defendant to perpetrator not to kill victim where there is evidence that defendant continued to "facilitat[e] the assault despite being aware of the risk [victim] would be killed" did not negate evidence of implied malice]; *People v. Superior Court* (*Valenzuela*) (2021) 73 Cal.App.5th 485, 502 [implied malice murder theory valid where death is accidental].) Irrespective of Lozano's after-the-fact statements regarding his fear, or that he told Terrell the attack was not what they planned, the evidence remained that Lozano witnessed Terrell in the process of stabbing Amaya, then he retrieved the carving fork and gave it to Terrell with the knowledge that Terrell would use the fork to continue the attack. This was substantial evidence that Lozano was a direct aider and abettor who knew his conduct endangered Amaya's life and he acted with conscious disregard for life.

Lozano further contends the medical examiner's opinion that the fatal wound was a knife wound rendered his act of

10

handing the fork to Terrell "inconsequential," and establishes that he did not act with malice. We are unpersuaded. When Lozano handed the fork to Terrell, he did not know which wound would be fatal. However, he knew that Terrell had already repeatedly stabbed Amaya and would use the fork to continue stabbing Amaya. An act that generally contributes to harming the victim, even if it does not cause the fatal injury, may support a finding of second degree implied malice murder. (*People v. Schell*, (2022) 84 Cal.App. 5th 437, 442–443 [finding evidence sufficient where defendant was one of at least eight gang members who participated in assault, defendant knew he was aiding in the attack, he knew others were using dangerous weapons in the attack, and he intended to stop the victim from escaping].)

We conclude substantial evidence supports the trial court's finding that Lozano directly aided and abetted Amaya's killing with implied malice. We need not reach the issue of express malice. The trial court properly denied Lozano's petition for resentencing under section 1172.6.

## DISPOSITION

The trial court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.