Filed 1/24/24  In re T.D CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re T.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>T.D.,<br><br>        Defendant and Appellant. | No. B322604<br><br>(Los Angeles County Super. Ct. No. TJ23831)<br><br>(Orange County Super. Ct. No. 22DL0270) |

    APPEAL from an order of the Superior Court of Los Angeles County, Melissa Widdifield, Judge, and an order of the Superior Court of Orange County, Lewis Clapp, Judge. Affirmed in part, reversed in part, and remanded with directions.

    Steven Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Assistant Attorney General, Susan Pithey, Senior Assistant Attorney General, Steven Matthews and Amanda Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

───────────────

T.D. was declared a ward of the juvenile court based on findings that he committed a second degree robbery and resisted and obstructed an officer. On appeal, T.D. contends there is insufficient evidence he aided and abetted a robbery. He also argues, and the People agree, that the court incorrectly calculated his maximum term of confinement. We conclude substantial evidence supports the juvenile court's finding as to the robbery count but agree the court erred in calculating the maximum term of confinement.[1] We remand for further proceedings as to the maximum term of confinement and otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 16, 2022, pharmacist Lynn Truong and pharmacy employees Ruben Solis and Jose Vega were working at a CVS store in Santa Ana. As Truong filled prescriptions, she saw someone break the glass partition that divided the pharmacy area from the rest of the store. Four individuals jumped over the pharmacy counter.[2] Some carried bags. They wore black ski

───────────────

[1] T.D. does not challenge the juvenile court order as to the count of resisting and obstructing an officer.
[2] While Truong remembered three individuals, Solis remembered four. Truong testified that she only looked to her right and did not see anything on her left side.

masks and black clothing. One also wore a red, yellow, and black sweatshirt or sweater.

After the first person jumped into the pharmacy, the other three "almost instantly" and "immediately" followed. Solis heard one masked individual say that the first person to move would get shot. Solis understood this statement to refer to himself, Truong, and Vega. The other three masked persons stood behind the individual speaking. Solis was scared, so he stepped aside to "let them do whatever they wanted to do." He was frightened because of the statement that he would be shot if he interfered.

Immediately after the threat, all four masked individuals dispersed throughout the pharmacy. They asked where the drugs Promethazine and Percocet were located and began putting medications in bags. Truong saw the individual wearing the red, yellow, and black sweater taking medications. Two of the individuals told Truong to open the pharmacy's safe where controlled medications were kept. Truong entered the code to the safe and informed them it would open after a time delay. Truong felt scared and did not want anyone to get hurt. She worried the masked individuals would hurt her if the safe did not open quickly enough. Even if they had not made a threat, Truong found the situation "inherently scary" because there were people in the pharmacy who were not supposed to be there.

Solis believed all four individuals were working together because they jumped into the pharmacy "simultaneously," laughed together, and told each other to hurry up. Three of the individuals left the pharmacy with the medications while one waited for the safe to open.

Gustavo Gonzalez, a CVS cashier, called 911. He had seen two of the individuals jump over the pharmacy's counter, one of

3

whom wore a red, yellow, and black sweater. Gonzalez saw this same individual run out of the pharmacy carrying a cash register. He saw four people get into the same vehicle and drive away. Gonzalez described the vehicle to the 911 dispatcher.

A police officer responding to the 911 call saw a vehicle matching Gonzalez's description of the car. The officer pursued the vehicle until it flipped over and came to a stop. All four individuals exited the car and fled on foot. After a pursuit, T.D. and two others were arrested. The fourth person escaped. T.D. was wearing a red, yellow, and black sweater.

In March 2022, the Orange County District Attorney's Office filed a Welfare and Institutions Code section 602 petition alleging T.D. had committed second degree robbery (Pen. Code §§ 211, 212.5, subd. (c))[3] and a misdemeanor count of resisting and obstructing an officer (§ 148, subd. (a)(1)).

At the adjudication hearing, defense counsel appeared to concede T.D. was the person at CVS wearing the red, yellow, and black sweatshirt or sweater. However, counsel argued T.D. intended to commit a "smash and grab" theft, not a robbery. Counsel also argued there was no evidence T.D. made the threatening statement or intended that it be made.

The juvenile court found the petition's allegations true and declared the maximum term of confinement to be five years. The court transferred the case to the Los Angeles Superior Court for all further proceedings after determining that T.D. and his family lived in Los Angeles County. At a June 2022 disposition hearing, T.D. was placed in community camp for five to seven months. T.D. timely appealed.

---

[3] All further undesignated statutory references are to the Penal Code.

4

## DISCUSSION

### I. Standard of Review

" 'The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases: we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable fact finder could find guilt beyond a reasonable doubt. [Citations.]' [Citation.]" (*In re A.G.* (2020) 58 Cal.App.5th 647, 653.) Substantial evidence is "defined as reasonable and credible evidence of solid value." (*People v. Vargas* (2020) 9 Cal.5th 793, 820 (*Vargas*).) We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, and we accept logical inferences drawn from circumstantial evidence. (*People v. Baker* (2021) 10 Cal.5th 1044, 1103 (*Baker*).) We resolve conflicting inferences and credibility findings in favor of the verdict. (*People v. Collins* (2021) 65 Cal.App.5th 333, 344 (*Collins*).) We do not reverse unless it appears " ' " 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " ' " the factfinder's verdict. (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.) " ' "The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence." ' " (*Vargas*, at p. 820.)

### II. Substantial Evidence Supports the Juvenile Court Finding That T.D. Aided and Abetted a Robbery

T.D. argues the evidence was insufficient to support the finding that he aided and abetted a robbery because there was no evidence he threatened the CVS employees or heard the threat made by someone else. We disagree.

"A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the

5

perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164 (*Cooper*).)  Accordingly, "proof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus— conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)  Only T.D.'s knowledge of his cohort's intent to commit a robbery and T.D.'s intent to assist it is at issue here.

Robbery is " 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force *or* fear.' " (*People v. Parson* (2008) 44 Cal.4th 332, 349, citing § 211.)  The fear may be either "(1) [t]he fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or, [¶] (2) [t]he fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery." (§ 212.)  "It is the use of force or fear which distinguishes robbery from grand theft . . . ." (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1707.)

Factors to be considered in "determining aiding and abetting of a robbery include presence at the scene of the crime, companionship, and conduct before and after the crime, including

6

flight." (*People v. Haynes* (1998) 61 Cal.App.4th 1282, 1294; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*) [same].)

These factors support the juvenile court's finding that T.D. aided and abetted the robbery. T.D. does not dispute that he was present during the crime. He was identified at the hearing as one of the four individuals who fled the vehicle and as the person wearing the red, yellow, and black sweatshirt or sweater. While mere presence at the crime is insufficient to establish aiding and abetting (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 (*Campbell*)), here there is evidence of collective conduct before and after the crime and of companionship. The perpetrators all wore ski masks and black clothing, suggesting they planned the crime together in advklklance. All four jumped behind the counter at roughly the same time. After entering the pharmacy area, all stood behind the member of the group who made the threatening statement to the pharmacy employees. Only after the statement was uttered did the four masked individuals disperse to gather medications.

While T.D. contends he only intended to conduct a "smash and grab" theft, the evidence suggested the plan encompassed more. The perpetrators did not simply grab items and run. They asked where specific controlled drugs were located and one waited to obtain those narcotics from a safe with a time-delayed opening. These specific requests indicated the group knew in advance that the cooperation of pharmacy employees would be necessary to accomplish the crime. The individuals appeared to work together, telling each other to hurry up. The group's acts appeared coordinated. All drove away in the same vehicle. After a high-speed chase and car accident, all fled the vehicle on foot.

"Their concerted action reasonably implies a common purpose . . . ." (*Campbell*, *supra*, 25 Cal.App.4th at p. 409.)

T.D. argues there is no evidence he specifically intended to take property by fear or knew one of his cohorts intended to do so. However, "[a]iding and abetting may be shown by circumstantial evidence." (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.) " 'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.]" (*Nguyen*, *supra*, 61 Cal.4th at p. 1055.) Either T.D. made the threatening statement himself or he stood directly behind the person who made it. (*Campbell*, *supra*, 25 Cal.App.4th at p. 409 [evidence of concerted action when defendant approached victims with perpetrator who said it was a robbery; defendant then remained in position].) After one person conveyed the threat, T.D. took the medications and cash register. Resolving all conflicting inferences in favor of the juvenile court order, and accepting all logical inferences drawn from the circumstantial evidence, we conclude the juvenile court could reasonably find T.D. heard the threat or knew that a threat would be used to accomplish the theft.[4] (*Baker*, *supra*, 10 Cal.5th at p. 1103; *Collins*, *supra*, 65 Cal.App.5th at p. 344.)

---

[4] T.D. argues the juvenile court at one point inaccurately characterized the threat to shoot the CVS employees as "yelled" rather than "said." We disagree that the court's choice of words was significant or invalidated its ultimate findings. (*Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859, 874 [appellate review is of trial court ruling not reasoning].) The evidence established that an audible threat was made while all four individuals, including T.D., stood together, and that after the

8

Moreover, even accepting T.D.'s assertion that he originally intended to commit only a theft, the evidence also supported a finding that his intent to aid and abet the robbery formed during the commission of the crime. (*Cooper*, *supra*, 53 Cal.3d at p. 1164 [getaway driver with no prior knowledge of robbery liable on aiding and abetting theory so long as driver forms the intent to facilitate or encourage commission of the robbery prior to or during the carrying away of loot to place of temporary safety].) There is no evidence that after one of the individuals threatened to shoot any employee who moved, T.D. was "surprised" or "afraid to interfere." (*Campbell*, *supra*, 25 Cal.App.4th at p. 409.) Instead, he continued to participate in the robbery by gathering medications and stealing a cash register. T.D. was not an "innocent, passive, and unwitting bystander." (*Id*. at p. 410.) He was a continuous participant in the crime before, during, and after the threatening statement, such that it is reasonable to infer his intent to aid and abet a robbery. (*Campbell*, at pp. 409–410; *In re Juan G.* (2003) 112 Cal.App.4th 1, 5 [sufficient evidence minor aided and abetted robbery where minor was with accomplice immediately before robbery and during attempted escape, and stood next to accomplice while he demanded money from victim at knifepoint].)

## III. The Juvenile Court Incorrectly Calculated the Maximum Term of Confinement

The parties agree, as do we, that the juvenile court

---

threat was made, ensuring the employees' cooperation, the four individuals began collecting medications. Whether the threat was spoken in a normal voice or yelled, the evidence supported a finding that T.D. aided and abetted the taking of property accomplished by force or fear.

incorrectly calculated T.D.'s maximum term of confinement. We reverse that portion of the court's order and remand for recalculation.

Under Welfare and Institutions code section 726, subdivision (d)(1), if a minor is adjudicated a ward pursuant to a Welfare and Institutions code section 602 petition, the court's order of wardship must "specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court."

If the court "aggregate[s] the period of physical confinement on multiple counts," then the " 'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code." (Welf. & Inst. Code, § 726, subd. (d)(3).) Section 1170.1, subdivision (a) provides: "The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction." This applies to subordinate misdemeanor convictions as well. (*In re David H.* (2003) 106 Cal.App.4th 1131, 1134.)

The middle term of imprisonment for second degree robbery is three years. (§ 213, subd. (a)(2).) Misdemeanor resisting and obstructing an officer is punishable by imprisonment in county jail not to exceed one year. (§ 148, subd. (a)(1).) This subordinate misdemeanor term calculated at one-third is four months. T.D.'s maximum aggregate term of confinement for the count of second degree robbery and count of resisting arrest is therefore three years and four months. We reverse the portion of the court's order setting the maximum term of confinement at five years and

10

remand to the juvenile court for recalculation.

T.D. also contends the juvenile court erred by failing to calculate his predisposition credits at the disposition hearing. (*In re Edward B.* (2017) 10 Cal.App.5th 1228, 1238.) As we remand this matter for further proceedings, we need not address this contention. Any issues related to the calculation or recalculation of predisposition credits may be raised in the juvenile court on remand.

## DISPOSITION

The order is affirmed, except as to the calculation of the maximum term of confinement which is reversed and vacated. The matter is remanded to the juvenile court for further proceedings consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:



EDMON, P. J.



LAVIN, J.