Filed 1/23/25  P. v. Rodriguez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LUIS ANGEL RODRIGUEZ,<br><br>     Defendant and Appellant. | B331267<br><br>Los Angeles County<br>Super. Ct. No. TA115722-02 |

APPEAL from an order of the Superior Court of Los Angeles County.  Eleanor J. Hunter, Judge.  Reversed and remanded.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Luis Angel Rodriguez of first degree murder and found true a lying-in-wait special circumstance. In 2022, Rodriguez filed a petition for resentencing under the provisions now found in Penal Code section 1172.6.[1] The court denied the petition at the prima facie stage. The court stated Rodriguez is not entitled to relief as a matter of law because the jury determined the murder was of the first degree. On appeal, Rodriguez argues he is entitled to an evidentiary hearing because it is possible the jury convicted him of first degree murder under the natural and probable consequences doctrine. We agree. Accordingly, we reverse the order denying his petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The conviction*

The People charged Rodriguez, Fernando Guzman, and Jesus Trujillo with the first degree murder of Jonathan Escobar (§ 187, subd. (a)) and shooting at an inhabited dwelling (§ 246). The People alleged the special circumstance that defendants intentionally killed Escobar by means of lying in wait (§ 190.2, subd. (a)(15)). The People also alleged firearm and gang enhancement allegations (§§ 186.22, subd. (b)(1)(C), 12022, 12022.53).

The People jointly tried Rodriguez, Guzman, and Trujillo. The People presented evidence that Rodriguez, Guzman, and Trujillo were members of the DMS gang.[2] Escobar was affiliated with a rival gang. The night of November 19, 2010, Rodriguez,

_____

[1] Undesignated statutory references are to the Penal Code.

[2] We recite this evidence not for its truth but for the basis for Rodriguez's conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459–460.)

2

Guzman, and Trujillo went to Escobar's apartment building. Guzman was friends with Escobar and sent him text messages as a ruse to get him to come outside. When Escobar did, Rodriguez and Trujillo fired shots at him. Escobar suffered two bullet wounds, one of which was fatal.

The jury convicted Rodriguez as charged. The jury determined the murder was of the first degree "under the theory that it was willful, deliberate, and premeditated or by means of lying in wait." The jury also found true the special circumstance allegation that "the defendants intentionally killed the victim by means of lying in wait," the gang enhancement allegation, and allegations that a "principal" personally used and intentionally discharged a firearm that proximately caused great bodily injury and death. The court sentenced Rodriguez to an aggregate term of 50 years to life.

## 2. *The resentencing petition*

In 2022, Rodriguez filed a petition for resentencing under section 1172.6.[3] Rodriguez asserted he is entitled to relief because the jury convicted him of murder under the felony murder rule or the natural and probable consequences doctrine. He also asserted he could not currently be convicted of murder because of changes made to sections 188 and 189.

The People filed an opposition brief arguing Rodriguez is ineligible for resentencing as a matter of law because he was the actual killer. In a supplemental brief, the People argued Rodriguez "was an actual killer, aided and abetted the actual

---

[3] Rodriguez filed his petition under former section 1170.95, which was later renumbered as section 1172.6. For the sake of simplicity, we refer only to section 1172.6 throughout this opinion.

3

killer, and was a major participant **and** no natural and probable consequences or felony-murder instruction was given." The People argued Rodriguez also is ineligible for relief because the jury found true the lying-in-wait special circumstance and concluded Rodriguez willfully, deliberately, and with premeditation committed murder.

The People attached to their opposition the verdict forms and jury instructions from Rodriguez's trial. The instructions revealed that—contrary to the People's representations—the trial court had instructed the jury on the natural and probable consequences doctrine. We discuss the instructions in more detail later in this opinion.

The superior court considered Rodriguez's petition at a hearing on May 30, 2023. The People continued to insist the jury had not been instructed on the natural and probable consequences doctrine. The People also argued Rodriguez is ineligible for relief because the jury convicted him of first degree murder under a willful, deliberate, and premediated theory, or a lying-in-wait theory.

Rodriguez asserted the jury had been instructed on the natural and probable consequences doctrine, and the People were wrong to claim otherwise. He argued the jury's finding on the lying-in-wait special circumstance was not conclusive because there was an error on the verdict form. Specifically, the form asked the jury to determine whether the "*defendants* intentionally killed the victim by means of lying in wait." (Italics added.) According to Rodriguez, the use of the plural "defendants" allowed the jury to impute to him a codefendant's intent to kill.

4

The superior court acknowledged that the jury had been instructed on the natural and probable consequences doctrine. Nevertheless, it determined Rodriguez is not entitled to resentencing as a matter of law and denied the petition. The court explained that "the defendant is ineligible for relief under 1172.6, because of the fact that the jury found him guilty under a direct aiding and abetting theory, not under a felony murder theory, nor under a natural and probable consequence theory, because they found him guilty of first." The court rejected Rodriguez's argument that the verdict form's reference to "defendants" allowed the jury to impute intent to him.

## DISCUSSION

Rodriguez argues the superior court erred by denying his petition at the prima facie stage on the ground that the jury convicted him of first degree murder. He contends the record of conviction does not conclusively rebut his assertion that the jury convicted him under the natural and probable consequences doctrine, which is no longer a valid theory of murder. Therefore, Rodriguez argues, he is entitled to a hearing at which the People have the burden to prove he is guilty of murder under current law.

### 1.    *Aiding and abetting murder*

Murder is "the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Malice can be either express or implied. It is express when the evidence shows a deliberate intention to kill, and it is implied when the defendant engages in conduct dangerous to human life, knows that the conduct endangers the victim's life, and acts with a conscious disregard for life. (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30.)

5

"[A] person who aids and abets a crime is guilty of that crime even if someone else committed some or all of the criminal acts." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1116–1117.) "A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.)

"In general, to establish liability for murder under the theory of direct aiding and abetting, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' [Citation.] In addition, . . . an aider and abettor may be liable for murder under a theory of implied malice where the aider and abettor aids in the commission of a life-endangering act, with ' "knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life." ' [Citation.] 'Thus, proof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea' —which here includes knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 466–467 (*Curiel*).)

At the time of Rodriguez's trial, an aider and abettor could also be convicted of murder under the natural and probable consequences doctrine. Under that doctrine, " 'an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense).' " (*Curiel, supra*, 15 Cal.5th at p. 466.) Therefore, "a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault. [Citation.] The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime." (*Id.* at p. 449.)

## 2.     *Senate Bill No. 1437*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) The bill limited accomplice liability under the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The legislation amended "section 188, which defines malice, and 189, which defines the degrees of murder to address felony-murder liability, and it add[ed] section [1172.6], which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions." (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417.)

Section 1172.6 provides a mechanism by which a person convicted of murder under the former law may be resentenced

7

if he could no longer be convicted of murder because of the changes to sections 188 and 189. (*People v. Strong* (2022) 13 Cal.5th 698, 708; see generally *Gentile, supra*, 10 Cal.5th at p. 843; *Lewis, supra*, 11 Cal.5th at pp. 959–960.) Once a petitioner establishes a prima facie case for relief and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing. (*Strong*, at pp. 708–709; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) The prosecution has the burden at the hearing to prove beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189. (*Strong*, at pp. 708–709; *Vargas*, at p. 951.)

At the prima facie stage, the court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proved. (*Lewis, supra*, 11 Cal.5th at p. 971.) However, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 117[2.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Ibid*.) The jury instructions are part of the record of conviction. (See *Curiel, supra*, 15 Cal.5th at p. 441 [examining jury instructions to determine whether jury made findings that conclusively rebutted allegations in a resentencing petition]; *People v. Estrada* (2022) 77 Cal.App.5th 941, 946, 949 [jury instructions showed trial court never instructed the jury on the natural and probable consequences doctrine; summary denial of petition affirmed].) The verdicts also are part of the record of conviction. (See *People v. Harden* (2022) 81 Cal.App.5th 45, 47–48, 55–56 (*Harden*) [affirming summary denial of petition; jury instructions and verdicts irrefutably established as a matter of

law that defendant was ineligible for resentencing].) A petitioner is bound by a jury's findings for purposes of assessing eligibility for relief at the prima facie stage. (See *Curiel*, at p. 441.)

We independently review the superior court's determination that Rodriguez failed to make a prima facie showing. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *Harden, supra*, 81 Cal.App.5th at p. 52.)

**3.** ***The relevant jury instructions***

The record of conviction shows the trial court instructed the jury with CALCRIM No. 400, which stated, "A person is guilty of a crime whether he committed it personally or aided and abetted the perpetrator. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." CALCRIM No. 401 told the jury, "Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The court instructed the jury that Rodiguez could be guilty of murder if he committed an assault with a firearm. The relevant instruction—CALCRIM No. 403—told the jury,

"To prove that the defendant is guilty of murder, the People must prove that:

"1. The defendant is guilty of assault with a firearm;

"2. During the commission of assault with a weapon a coparticipant in that

9

> assault with a firearm committed
> the crime of murder;
>
> "AND
>
> "3. Under all of the circumstances, a
> reasonable person in the defendant's
> position would have known that
> the commission of the murder was
> a natural and probable consequence
> of the commission of the assault with
> a firearm."

As to the degree of the murder, the court instructed the jury with CALCRIM No. 521. That instruction told the jury, "The defendant has been prosecuted for first degree murder under two theories: (1) the murder was willful, deliberate, and premediated and (2) the murder was committed by lying in wait." On the former theory, the court instructed the jury it must find "[t]he defendant . . . acted willfully, deliberately, and with premeditation." On the latter theory, the court instructed the jury it must find (1) the defendant "concealed his purpose from the person killed"; (2) "[h]e waited and watched for an opportunity to act"; and (3) "[t]hen, from a position of advantage, he intended to and did make a surprise attack on the person killed."

The court instructed the jury on the lying-in-wait special circumstance with CALCRIM No. 728. That instruction told the jury the special circumstance is true if (1) "The defendant intentionally killed Jonathan Escobar"; and (2) "The defendant committed the murder by means of lying in wait." The instruction explained that a person commits a murder by means of lying in wait if (1) "He concealed his purpose from

10

the person killed"; (2) "He waited and watched for an opportunity to act"; (3) "Then he made a surprise attack on the person killed from a position of advantage"; and (4) "He intended to kill the person by taking the person by surprise." The instruction stated the duration of the lying in wait "must be substantial and must show a state of mind equivalent to deliberation or premeditation."

The court also instructed the jury with CALCRIM No. 702 as follows: "If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with the intent to kill for the special circumstance of lying in wait to be true."

The jury asked the court two questions during deliberations: (1) "If an individual aids and abets, even without intent, can that person be guilty of murder or any other charge[?]" and (2) "Can an individual who does not have the intent of murder be convicted [of] murder, if he aides and abets an individual who does have the intent?" The court responded to both questions by telling the jury, "Please refer to jury instructions # 400, 401 and 403. If you need anything further please inform the court."

4. ***The superior court erred by concluding Rodriguez is ineligible for resentencing because the jury convicted him of first degree murder***

Contrary to the People's argument below, the record of conviction plainly shows the trial court instructed the jury on the natural and probable consequences doctrine. CALCRIM No. 403, in particular, told the jury Rodriguez is guilty of murder if (1) he committed assault with a firearm, (2) a coparticipant in the assault with a firearm committed murder, and (3) murder was a natural and probable consequence of the assault with

11

a firearm. The instruction allowed the jury to convict Rodriguez of murder without finding he personally harbored express or implied malice. Instead, it allowed the jury to impute malice to Rodriguez based solely on his participation in an assault with a firearm, something the current version of section 188 prohibits. (§ 188, subd. (a)(3).)

The superior court rightly rejected the People's argument and acknowledged the jury had been instructed on the natural and probable consequences doctrine. Nevertheless, the court seemed to believe Rodriguez is ineligible for resentencing as a matter of law because the jury found the murder was of the first degree. The court was mistaken.[4]

In *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), the California Supreme Court held an accomplice cannot be convicted of first degree willful, deliberate, and premeditated murder under the natural and probable consequence doctrine. (*Id*. at pp. 158–159.) Here, however, the jury convicted Rodriguez in 2012, more than two years before *Chiu* was decided. At that time, the law did not prohibit a first degree murder conviction under the natural and probable consequences doctrine. (See *ibid*.; see also *People v. Gastelum* (2020) 45 Cal.App.5th 757, 765–769 (*Gastelum*) [holding the natural and probable consequences doctrine can support liability for first degree lying-in-wait murder].)

The trial court's instructions on first degree murder reflected the law as it existed before *Chiu*. CALCRIM No. 521

---

[4] The Attorney General does not address the superior court's stated reason for denying Rodriguez's petition. We take his silence as an implicit concession that the superior court erred in that regard.

told the jury it could convict Rodriguez of first degree murder under two theories: (1) if "the defendant murdered while lying in wait or immediately thereafter"; or (2) if "[t]he defendant . . . acted willfully, deliberately, and with premeditation." The court did not expressly instruct the jury that either theory required it to find Rodriguez was the actual killer or a direct aider and abettor.

Nor did the instructions implicitly require the jury to make those findings. If the jury determined Rodriguez was guilty of murder as an aider and abettor, it may have understood "the defendant" in CALCRIM No. 521 to refer to the direct perpetrator, rather than Rodriguez. If so, to convict Rodriguez of first degree murder, the jury had only to find the direct perpetrator committed murder by means of lying in wait, or the direct perpetrator acted willfully, deliberately, and with premeditation. The jury did not have to make any new findings about Rodriguez. Accordingly, the jury's determination that the murder was of the first degree does not rule out the possibility that the jury convicted Rodriguez under the natural and probable consequences doctrine. (See *Chiu, supra*, 59 Cal.4th at pp. 158, 160–161 [CALCRIM instructions allowed the jury to convict the defendant of first degree premeditated murder under the natural and probable consequences doctrine]; *Gastelum, supra,* 45 Cal.App.5th at p. 766 [CALCRIM instructions allowed the jury to convict the defendant of first degree lying-in-wait murder under the natural and probable consequences doctrine].)

The same is true of the jury's finding on the lying-in-wait special circumstance. The record suggests the jury may have believed it could find the special circumstance true under the natural and probable consequences doctrine. During

13

deliberations, the jury asked the court, "If an individual aids and abets, even without intent, can that person be guilty of murder or any other charge[?]" The court responded by pointing the jurors to the instructions on aiding and abetting murder, including the instruction on the natural and probable consequence doctrine. The jury did not specify what it meant by "other charge." However, it is at least conceivable that the jury was referring to the lying-in-wait special circumstance allegation. If so, the court's response may have suggested to the jury that the natural and probable consequences doctrine applies to the special circumstance.

We are not persuaded by the Attorney General's contention that the jury necessarily would have understood CALCRIM No. 728 to require it to find Rodriguez was the actual killer or a direct aider and abettor. That instruction told the jury the lying-in-wait special circumstance has two elements: (1) "The defendant intentionally killed Jonathan Escobar"; and (2) "The defendant committed the murder by means of lying in wait." According to the Attorney General, because this instruction required the jury to find "[t]he defendant intentionally killed" the victim, the jury must have determined Rodriguez intentionally killed Escobar.

To the extent the jury concluded Rodriguez was the actual killer, we agree with the Attorney General that CALCRIM No. 728 required it to find he intentionally killed Escobar. However, the Attorney General does not address the possibility that the jury instead convicted Rodriguez as an aider and abettor. In that scenario, the jury may have understood CALCRIM No. 728 to require only that it find the direct perpetrator intentionally killed Escobar. Such a finding is not necessarily

14

inconsistent with a conviction under the natural and probable consequences doctrine.

The Attorney General also points to CALCRIM No. 702, which told the jury, "If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with the intent to kill for the special circumstance of lying in wait to be true." As the Attorney General notes, this instruction required the jury to find Rodriguez acted with the intent to kill if he was not the actual killer. However, our Supreme Court has explained that an intent to kill standing alone is insufficient to render a person culpable for another's acts. (*Curiel, supra*, 15 Cal.5th at p. 468.) Accordingly, the fact that the court instructed the jury with CALCRIM No. 702 does not establish that the jury convicted Rodriguez under a currently valid theory of murder.

In sum, we are not persuaded that the jury necessarily interpreted and applied the lying-in-wait special circumstance instructions in the manner the Attorney General proposes. That the Attorney General cannot articulate precisely how the instructions precluded the jury from convicting Rodriguez under the natural and probable consequences doctrine significantly undermines his arguments. On the record before us, we cannot rule out the possibility that the jury interpreted the instructions some other way. Given that possibility, the record does not conclusively rebut Rodriguez's assertion that he could not be convicted of murder under current law. Therefore, the superior court erred by denying Rodriguez's petition for resentencing at the prima facie stage.[5]

---

[5] Because we conclude the instructions did not conclusively preclude the jury from convicting Rodriguez of murder under

15

## DISPOSITION

We reverse the order denying Rodriguez's petition.  On remand, the court must issue an order to show cause and hold an evidentiary hearing as required under section 1172.6.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.

---

a presently invalid theory, we need not consider Rodriguez's argument regarding an ambiguity in the verdict form.